**2023 IL 128612**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 128612)

THE VILLAGE OF KIRKLAND, Appellee, v. KIRKLAND PROPERTIES HOLDINGS COMPANY, LLC I *et al.*, Appellants.

*Opinion filed May 18, 2023.*

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Holder White, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1 Plaintiff, the Village of Kirkland (Village), filed its third amended complaint against defendants, Kirkland Properties Holdings Company, LLC I, and Kirkland Properties Holdings Company, LLC II (hereinafter KPHCI, KPHCII, and collectively defendants), in the De Kalb County circuit court. In its third amended complaint, the Village alleged that defendants breached a 2003 recorded annexation

agreement executed by it and the National Bank and Trust Company of Sycamore as trustee of trust No. 4235000 (Trustee), then legal owner of property now consisting of an annexed 114-acre subdivision. The Village alleged that defendants were subject to the terms of the annexation agreement as successor owners of record to the Trustee when they purchased undeveloped portions of the property from Plank Road, LLC (Plank Road) (not a party to this appeal), which had acquired the property from the Trustee. The Village alleged that defendants breached the annexation agreement by refusing its request for a letter of credit in the amount proportionate to the number of lots defendants owned in the subdivision, to secure completion of roads in the subdivision as it was developed. The Village sought damages for breach of contract or, in the alternative, equitable relief in the form of specific performance.

¶ 2        Defendants moved to dismiss the Village's third amended complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)), arguing that, although the annexation agreement was a covenant that ran with the land, it did not confer successor status to an entity that purchased only a portion of the property subject to annexation, as opposed to the whole of the property. See generally *Streams Sports Club, Ltd. v. Richmond*, 99 Ill. 2d 182, 188 (1983) (covenant that runs with the land is binding on subsequent owners). The circuit court agreed and dismissed the Village's third amended complaint. Having secured the dismissal of the complaint against them, defendants moved for attorney fees pursuant to prevailing-party attorney-fee provisions in the annexation agreement, and the circuit court granted their request.

¶ 3        The Appellate Court, Second District, reversed the circuit court's ruling that defendants were not bound by the terms of the annexation agreement and vacated the award of attorney fees. We hereby affirm the appellate court's decision, reverse the circuit court's decision, and remand for further proceedings consistent with this opinion.

¶ 4                              I. BACKGROUND

¶ 5        In reviewing the propriety of a dismissal pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)), we accept all well-pleaded facts in the complaint and the reasonable inferences that can be drawn from those facts as true. *Tuite v.*

*Corbitt*, 224 Ill. 2d 490, 509 (2006). Accordingly, the following facts are drawn from the allegations of the Village's complaint and its attached exhibits.

¶ 6                                   A. Annexation

¶ 7        On January 31, 2002, Edward Vander-Molen transferred title to real property to the Trustee of the aforementioned trust, the beneficiaries of which consisted of David R. Rood, Barbara L. Rood, Robert D. Rood, and Ann M. Rood. On May 5, 2003, the Village entered into the annexation agreement with the Roods and the Trustee, whereby the Village agreed to annex and incorporate into its municipal boundaries approximately 114.27 acres of property that had been transferred to the trust by Vander-Molen. In exchange, the Roods and the Trustee agreed to develop the property into a residential subdivision, which required the completion of certain public improvements on the property.

¶ 8        The annexation agreement stated that it was executed pursuant to and in accordance with the provisions of article 11, division 15.1, of the Illinois Municipal Code (65 ILCS 5/11-15.1-1 to 11-15.1-5 (West 2002) (titled "Annexation Agreements")). The annexation agreement also identified the beneficial owners, the Roods, and the legal owner, the Trust, as the collective "[l]andowner" who desired to annex the "[s]ubject [p]roperty" to the Village and to develop a residential subdivision according to an attached preliminary subdivision plat. The "[s]ubject [p]roperty" was identified as the real estate described in an attached exhibit, which consisted of the 114.27 acres of land located west of the Village's corporate limits.

¶ 9        According to the annexation agreement, the Village had concluded that the annexation of the property into the Village, under the terms and conditions set forth in the annexation agreement, "would further the orderly growth and quality of life of the Village," "enable the Village to control the development of the area," and "serve the best interests of the Village." The annexation agreement provided that

> "the development of the [s]ubject [p]roperty for the use as permitted under the [z]oning [o]rdinance of the Village and in accordance with the terms and conditions of this [Annexation] Agreement, will inure to the benefit and improvements of the Village and its residents, *** promote the sound planning

and development of the Village[,] and *** otherwise enhance and promote the general welfare of the people of the Village."

¶ 10 Pursuant to section 3 of the annexation agreement, the Village agreed to, within 60 days of the execution of the annexation agreement, enact a valid and binding ordinance annexing the subject property to the Village and rezone the property to single family residential zoning. In section 5 of the annexation agreement, the parties acknowledged that the property would be developed in stages, requiring the submission of plats and plans for each stage or unit.

¶ 11 In the annexation agreement, the landowner agreed to provide "proper storm drains and water main systems" (section 7) and "storm water storage" (section 11) "in accordance with the Village's standards and ordinances." Moreover, the Village agreed that, upon the landowner's proper completion of construction and satisfactory testing of, *inter alia*, the storm sewer and water main systems (section 7) and the well and water supply and distribution facility (section 9), "the Village shall promptly accept such improvements and thereafter maintain such improvements."

¶ 12 In section 10 of the annexation agreement, the landowner agreed to "construct all roadways required to be developed on the [s]ubject [p]roperty." Pursuant to section 10, the roadways were to be constructed, with certain exceptions, in accordance with the Village's standards and ordinances. Section 10 provided, in pertinent part:

"Prior to the occupancy of any building, the gravel base shall be constructed to the approved thickness. Once 50% of the buildings in a particular phase are occupied, no further occupancy permits shall be issued for that phase until the first layer of the bituminous surface has been installed throughout that phase [*i.e.*, until the road was complete to a certain stage of development]. Once 80% of the buildings in a particular phase are occupied, no further occupancy permits shall be issued for that phase until the final layer of the bituminous surface has been installed throughout that phase, [*i.e.*, until the road was complete to a certain, later stage of development]. The [l]andowner shall maintain the stone base and shall seal coat the same to control dust if required by [the] Village prior to the installation of the bituminous surface. Landowner shall be responsible for maintenance and snow removal on all roads in the subdivision

- 4 -

until said roads are accepted by the Village. Upon the proper completion of the street construction, the Village shall promptly accept such improvements and thereafter maintain such improvements."

¶ 13    Section 13 provided that the landowner shall dedicate the roadways, public improvements, certain water lines, and certain storm sewers to the Village, and "[t]he Village shall promptly accept such improvements upon completion of construction *** and thereafter maintain such improvements." Section 14 of the annexation agreement provided as follows:

"In lieu of a construction bond or development bond or bonds, the Village will require an irrevocable letter of credit from a financial institution to guarantee construction and quality of all public facilities to be constructed in any stage or unit of development for which approval is sought. Said letter of credit shall be in the amount of one hundred percent (100%) of the contract costs of construction of all of the public facilities in the unit or stage or one hundred twenty five percent (125%) of [l]andowner'[s] engineer's contract estimate for the unit or stage as approved by the Village [e]ngineer; and said letter of credit shall be payable to the Village.

As the [l]andowner completes items within each letter of credit, subject to approval by the Village [e]ngineer, the letter of credit shall be abated accordingly. Landowner agrees to cause the letter of credit to be extended to cover the actual time of construction."

¶ 14    Section 27 provided for a 20-year term for the annexation agreement, and section 28, subsection I, stated:

"All terms and provisions of this Agreement shall be binding upon, inure to the benefit of, and be enforceable by the parties hereto, their heirs, executors, administrators, successors[,] and assigns."

¶ 15    The annexation agreement was recorded with the De Kalb County Recorder's Office. Pursuant to the provisions of the annexation agreement, the Village annexed the property to the Village, rezoned the property to allow for single family residential homes, and approved two final plats of the subdivision with the De Kalb County Recorder's Office. As a result of the annexation agreement, the subdivision

lots on the property have access to water mains and Village treatment plant services, and the Village provides potable water for the subdivision.

¶ 16    On November 30, 2011, the Trustee transferred title to 41 of the 82 lots that comprised the subject property to Plank Road. In 2017, Plank Road transferred title to approximately 34 of the 41 lots it owned to defendants (15 to KPHCI and 19 to KPHCII) by special warranty deeds, subject to "the [p]ermitted [t]itle [e]xceptions, as described on" an attached exhibit, which listed the annexation agreement and ordinance annexing the land.

¶ 17    On May 8, 2019, the Village sent demand letters to defendants requesting that they deposit a letter of credit in the proportionate amount of their lots in the subdivision and/or the amount of road frontage of such lots to secure the repair, completion, and/or replacement of the roads in the subdivision. Defendants did not deposit the requested letters of credit, nor did they complete the roads.

¶ 18                              B. Circuit Court Proceedings

¶ 19    As a result, on June 18, 2019, the Village filed its complaint against defendants, and on August 27, 2020, the Village filed a third amended complaint, seeking damages for breach of contract or, in the alternative, relief in the form of specific performance, requesting the circuit court order defendants to specifically perform section 14 of the annexation agreement and deliver a letter of credit, in a proportionate amount, to repair, construct, and/or replace the roads in phase one of the subdivision (KPHCI) and phase two of the subdivision (KPHCII). When the Village filed suit, KPHCI owned 15 of the total 56 lots in phase one of the subdivision while KPHCII owned 19 of the total 26 lots in phase two of the subdivision.

¶ 20    The Village alleged that by entering into the annexation agreement, which expressly provided that it was made pursuant to and in accordance with the annexation-agreement provisions of the Municipal Code (65 ILCS 5/11-15.1-1 to 11-15.1-5 (West 2002)), the original parties to the annexation agreement intended the annexation agreement's provisions to run with the land and apply to successor landowners and, to that end, the annexation agreement was recorded with the Dekalb County Recorder's Officer.

- 6 -

¶ 21 The Village alleged that Plank Road was a successor of the Trustee, relative to the lots that it acquired by deed and, by extension, defendants were successors relative to the lots they received by special warranty deed from Plank Road. Accordingly, the Village argued that defendants were bound by the annexation agreement and were required to comply with section 14's terms.

¶ 22 On October 16, 2020, defendants filed a section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2018)) the Village's third amended complaint, in which they argued that they were not bound by the annexation agreement because they owned less than the entire parcel annexed and encompassed by the annexation agreement. In defendants' view, because the annexation agreement did not state that its provisions ran with "any portion of the land," the annexation agreement involved a covenant that ran with the land in its entirety only, and once the land was sold in a configuration less than its entirety, the covenant ceased to apply. Defendants argued that, because they owned a subset of the originally described land, they could not be considered successor owners under section 11-15.1-4 of the Municipal Code. 65 ILCS 5/11-15.1-4 (West 2002) ("[a]ny annexation agreement executed pursuant to this Division 15.1 *** shall be binding upon the successor owners of record of the land which is the subject of the agreement and upon successor municipal authorities"). Defendants conceded that, under their interpretation, they would have no standing to compel the Village to fulfill its obligations under the annexation agreement, stating: "[T]hat's a problem in this case, because we have a neighborhood that is not developed, despite [the Village] once having an adequate security bond. So this ruling will cut both ways."

¶ 23 The Village responded that section 11-15.1-4 of the Municipal Code (*id.*), incorporated by law into every annexation agreement, mandated that the annexation agreement was binding on the successor owners of record, not just those that purchased the property in its original configuration. The Village also asserted that the provisions in the annexation agreement contemplated the property being subdivided and evidenced an intention that they run with the land, whether the land was transferred in its entirety or subdivided and portioned off to different developers. The Village referred, specifically, to those provisions concerning infrastructure and stormwater requirements that would be "completely unnecessary" if the annexation agreement were to apply only to a property owner who retained the whole acreage.

¶ 24        On December 7, 2020, the circuit court agreed with defendants and dismissed with prejudice the Village's third amended complaint. At the hearing on the motion to dismiss, the circuit court found that section 11-15.1-4 of the Municipal Code was silent regarding whether a purchaser of less than all of the land that is the subject of an annexation agreement may be considered a successor owner bound by an annexation agreement. See *id.* Accordingly, citing *Doyle v. Village of Tinley Park*, 2018 IL App (1st) 170357 (rejecting successor liability pursuant to annexation agreement where successor stepped into shoes of predecessor to sue predecessor), and *United City of Yorkville v. Fidelity & Deposit Co. of Maryland*, 2019 IL App (2d) 180230 (finding successor liability pursuant to annexation agreement), the circuit court reasoned that, because defendants had purchased less than the whole of the land annexed, they were not successors under the annexation agreement and were not bound by its provisions.

¶ 25        The circuit court further cited *Doyle* for the proposition that, if the drafters of an annexation agreement "intended to confer successor status upon each and every purchaser of a lot within a subdivision[,] as opposed to a developer who purchased the entire subdivision, the agreement would have expressly" included the language "successor owners of record of the subject property *** and/or any portion thereof." The circuit court distinguished *Yorkville*, 2019 IL App (2d) 180230, ¶ 99, finding that the annexation agreement in that case contained a provision that acknowledged that a successor developer may own a portion of the subject property and remain bound by the agreement.

¶ 26        On December 17, 2020, following the circuit court's dismissal of the complaint, defendants filed a motion for an award of attorney fees, asserting that they were entitled to contractual attorney fees and costs as prevailing parties under the annexation agreement. On March 17, 2021, after a hearing on the issue, the circuit court determined that defendants had a contractual right to file the motion for fees under the prevailing-party terms of the annexation agreement. Accordingly, on June 2, 2021, after considering the reasonableness of defendants' attorney fees and costs, the circuit court entered its final judgment in favor of defendants and against the Village, awarding attorney fees and costs in the amount of $19,381.24.

¶ 27                              C. Appellate Court Proceedings

¶ 28        The Village appealed, and the appellate court reversed the circuit court's ruling
that defendants were not bound by the terms of the annexation agreement. 2022 IL
App (2d) 200780. The appellate court reviewed *Doyle*, *Yorkville*, and *City of Elgin
v. Arch Insurance Co.*, 2015 IL App (2d) 150013 (finding successor liability
pursuant to annexation agreement), and concluded that the annexation agreement
applied to defendants as successor owners of the annexed property, even though
they owned only a portion of the original configuration described in the annexation
agreement. 2022 IL App (2d) 200780, ¶ 37. The appellate court distinguished
*Doyle*, 2018 IL App (1st) 170357, ¶ 32 n.3, finding it presented "an irregular and
easily distinguishable fact pattern." 2022 IL App (2d) 200780, ¶ 51. The appellate
court held that

> "although the *Yorkville* annexation agreement expressly referred to successors
> who owned just a portion of the subject property, whereas the Annexation
> Agreement in our case does not, the public policy concerns expressed in
> *Yorkville*[, *i.e.*, ensuring the fulfillment of an annexation agreement governing
> a unitary tract of land later divided and sold to different developers,] are equally
> compelling in the instant case." *Id.* ¶ 52.

¶ 29        The appellate court held that "[t]he view that proportionate responsibility under
an annexation agreement is a common and workable scenario is further supported
by [its] opinion in *Elgin*, 2015 IL App (2d) 150013." *Id.* ¶ 53. The appellate court
noted that in *Elgin* it had "declined to subscribe to the *Doyle* court's concern that
conferring successor status on those who purchase a portion of the subject property
such that they will be bound by an annexation agreement would have the
unintended consequence of burdening ordinary homeowners with municipal
development responsibilities." *Id.*

¶ 30        The appellate court concluded "that the Annexation Agreement contemplated
that the subject property would be divided and sold, potentially to different
developers, who would be proportionally bound by the Annexation Agreement,
which was a covenant that ran with the land." *Id.* ¶ 55. Noting that the annexation
agreement set forth that the subject property was to be developed and subdivided
in stages or phases, the appellate court held that this sort of division is amenable to
practical application. *Id.* ¶¶ 56-57. The appellate court noted:

"For example, section 14 of the Annexation Agreement, addressing the irrevocable letter of credit at issue here, is workable in the event that multiple developers separately owned portions of the subject property. Again, that provision stated that the '[l]andowner would secure an irrevocable letter of credit *** from a financial institution payable to the Village to guarantee the quality construction of all public facilities to be constructed *at any unit or stage of development for which approval is sought*. The letter of credit would be in the amount of 100% of the contract costs of construction in the unit or stage of development or 125% of the [l]andowner engineer's contract estimate in the unit or stage of development.' (Emphasis added.) The Village here sought a letter of credit in an amount specific to the stage of development, for roads only, not for storm drains, etc., and in accordance with [defendants'] proportion of ownership." *Id.* ¶ 57.

¶ 31 The appellate court further noted the "multiple provisions in the Annexation Agreement [(including sections 7, 9, 10, 13, and 27)] clarify[ing] that there is an end to any owner's obligation to participate in the development of the property." *Id.* ¶ 58. The appellate court held that "[t]hese provisions show that, following the completion and acceptance by the Village of any stage or phase of development, the responsibility for the improvements will lie with the Village and not with any subsequent purchaser." *Id.*

¶ 32 Given these provisions, the appellate court held that it did not share the *Doyle* court's concern that, under the Village's interpretation, individual homeowners would be unduly burdened with the responsibility of municipal improvements. *Id.* ¶ 60. The appellate court held that, instead, the adoption of defendants' interpretation would lead to an absurd result. *Id.* By example, the appellate court explained that, "if the landowner had sold every lot but one to a new developer, in this case 81 of 82 lots, the new developer would not be a 'successor' and would not be bound by the terms of the Annexation Agreement." *Id.* The appellate court stated:

"This outcome would certainly undermine the public policy of ensuring that annexation agreements are adhered to so that municipal development may proceed in an orderly and predictable manner. [Citation.] Moreover, given that the Annexation Agreement contemplated the possibility that the subject

property might be subdivided and developed in stages, it would make little sense to interpret the agreement as no longer applying where a successor developer takes on the development of a subsequent stage of the development. Indeed, this is an absurdity that would potentially lead to stalled development, as the successor developer and the Village would have to commence new annexation negotiations." *Id.*

The appellate court concluded that the annexation agreement's terms clearly contemplated that the subject property would be subdivided and developed in stages and phases, which is consistent with proportionally burdening successor owners with obligations under the annexation agreement. *Id.* ¶ 61.

¶ 33        The appellate court "conclude[d] that the original parties to the Annexation Agreement intended to confer successor status on those who purchase a portion of the subject property during the development phase, a result entirely consistent with the public policy favoring adherence to annexation agreements and the orderly progression of development." *Id.* The appellate court thus held that the Village had properly pleaded that defendants were successor owners of record bound by the terms of the annexation agreement and that the Village's complaint should have survived dismissal. *Id.* Because defendants were no longer the prevailing party, the appellate court vacated the circuit court's award of attorney fees and costs. *Id.* ¶ 62.

¶ 34        On September 28, 2022, this court allowed defendants' petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

¶ 35                                          II. ANALYSIS

¶ 36                                       A. Notice of Appeal

¶ 37        Initially, defendants argue that the appellate court lacked jurisdiction over the appeal of the circuit court's decision because the Village's notices of appeal did not contain prayers for relief. Courts of review have an independent duty to consider jurisdiction because a jurisdictional claim is a threshold issue that must be addressed before considering an appeal's merits. *People v. Lewis*, 234 Ill. 2d 32, 36-37 (2009).

¶ 38    Illinois Supreme Court Rule 303(b)(2) (eff. July 1, 2017) provides that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." "The filing of a notice of appeal 'is the jurisdictional step which initiates appellate review.' " *People v. Smith*, 228 Ill. 2d 95, 104 (2008) (quoting *Niccum v. Botti, Marianaccio, DeSalvo & Tameling, Ltd.*, 182 Ill. 2d 6, 7 (1998)). A notice of appeal confers jurisdiction on a court of review to consider the judgments or parts of judgments specified. *Lewis*, 234 Ill. 2d at 37. "Although the cases often speak in terms of jurisdiction, it is generally accepted that a notice of appeal is to be liberally construed." *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433 (1979).

¶ 39    "The purpose of the notice of appeal is to inform the prevailing party that the other party seeks review of the trial court's decision." *Lewis*, 234 Ill. 2d at 37. The notice of appeal " 'should be considered as a whole and will be deemed sufficient to confer jurisdiction on an appellate court when it fairly and adequately sets out the judgment complained of and the relief sought, thus advising the successful litigant of the nature of the appeal.' " *Smith*, 228 Ill. 2d at 105 (quoting *Lang v. Consumers Insurance Service, Inc.*, 222 Ill. App. 3d 226, 229 (1991)). Consequently, " '[w]here the deficiency in notice is one of form, rather than substance, and the appellee is not prejudiced, the failure to comply strictly with the form of notice is not fatal.' " *Id.* (quoting *Lang*, 222 Ill. App. 3d at 230); see also *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011).

¶ 40    On December 23, 2020, the Village filed its notice of appeal from the circuit court's December 7, 2020, order dismissing its third amended complaint. Because defendants had filed a motion for an award of attorney fees and costs on December 17, 2020, and the motion remained pending on December 23, 2020, the Village's December 23, 2020, notice of appeal was premature. See *Marsh v. Evangelical Covenant Church of Hinsdale*, 138 Ill. 2d 458, 464 (1990) (an order is not appealable until all claims are resolved). On June 3, 2021, the Village filed its notice of appeal from the judgment of the circuit court entered on June 2, 2021, granting defendants' petition for attorney fees and costs, which was based on the dismissal of the Village's third amended complaint and defendants' status as prevailing parties under the annexation agreement.

¶ 41    The Village's June 3, 2021, notice of appeal was sufficient to confer appellate jurisdiction over its challenge to the circuit court's award of attorney fees and the circuit court's dismissal of the Village's third amended complaint, on which the circuit court based its award of attorney fees. See *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 23 (a notice of appeal confers jurisdiction even if order is not expressly mentioned in the notice of appeal, if that order was " 'a "step in the procedural progression leading" ' to the judgment which was specified in the notice of appeal" (quoting *Burtell*, 76 Ill. 2d at 435, quoting *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1254 (3d Cir. 1977))).

¶ 42    The June 3, 2021, notice of appeal, considered as a whole and construed liberally, adequately identified the circuit court's judgment and informed defendants of the nature of the appeal. *Lewis*, 234 Ill. 2d at 39 (notice of appeal sufficient to confer appellate jurisdiction because, considered as a whole and construed liberally, notice adequately identified challenged judgment and informed appellee of nature of appeal). Moreover, defendants do not argue they were prejudiced in any way by the notice of appeal, and it does not appear that they were. See *People v. Patrick*, 2011 IL 111666, ¶ 23 (failure to comply strictly with the form of notice is not fatal if appellee is not prejudiced). Because the Village's notice of appeal, considered as a whole, fairly and adequately set out the judgment complained of and advised defendants of the nature of the appeal, we conclude that the appellate court properly exercised jurisdiction over the appeal.

¶ 43                                  B. Successor Liability

¶ 44    The circuit court dismissed the Village's third amended complaint in favor of defendants and, accordingly, awarded defendants attorney fees and costs pursuant to a prevailing-party provision in the annexation agreement. A motion to dismiss pursuant to section 2-615 of the Code challenges the legal sufficiency of a complaint and asserts that the plaintiff has failed to state a cause of action. 735 ILCS 5/2-615 (West 2018); *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11. A section 2-615 motion presents the critical question of whether the facts alleged in the complaint, viewed in the light most favorable to the plaintiff and taking all well-pleaded facts and all reasonable inferences from those facts as true, are sufficient to state a cause of action upon which relief may be granted. *Doe-*

*3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 16. Dismissal pursuant to section 2-615 of the Code is appropriate when the facts alleged do not constitute a cognizable claim or when the facts alleged conclusively demonstrate that, as a legal matter, the plaintiff has no right to recover from the defendant. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86-87 (1996). We review *de novo* the dismissal of a complaint pursuant to section 2-615 of the Code. *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002).

¶ 45 As aptly noted by the appellate court, the circuit court's dismissal here was guided by its interpretation of section 11-15.1-4 of the Municipal Code and by the language of the annexation agreement. Interpretation of statutes and contracts is also subject to *de novo* review. *Valerio v. Moore Landscapes, LLC*, 2021 IL 126139, ¶ 20.

¶ 46 In the Village's third amended complaint, the Village alleged breach of contract by defendants and sought money damages or specific performance. To properly allege a breach of contract claim, a plaintiff must plead "(1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach." *Ivey v. Transunion Rental Screening Solutions, Inc.*, 2022 IL 127903, ¶ 28. To request specific performance, a plaintiff must allege a valid contract that is definite and certain in its terms so that the court can require a party to specifically perform it. *Crocker v. Smith*, 366 Ill. 535, 537 (1937); see also *White v. Lang*, 401 Ill. 219, 223 (1948) (in specific performance suit, province of court is to enforce contract parties have executed). To consider either claim, we must determine whether defendants were bound as successors in title to the terms of the annexation agreement.

¶ 47 Citing *Doyle*, defendants argue that entities that purchase only portions of annexed land cannot be considered "successor owners of record of the land which is the subject of the agreement" under section 11-15.1-4 of the Municipal Code (65 ILCS 5/11-15.1-4 (West 2002)) or be bound as "successors" by an annexation agreement, unless the annexation agreement clearly and unambiguously states the agreement is binding on successor owners of the entire parcel "or any portion thereof." We agree with defendants that, if the parties to the annexation agreement had included "or any portion thereof," in the language of the annexation agreement, it would have precluded their argument here. However, we disagree with

defendants that the absence of this language in the Municipal Code, or in section 28 of the annexation agreement, precludes the conclusion that defendants are subject to successor liability as "successor owners of record of the land which is the subject of the agreement" pursuant to the Municipal Code (*id.*) and "successors" pursuant to the annexation agreement.

¶ 48                    1. Section 11-15.1-4 of the Municipal Code

¶ 49        The Village argues that defendants' assertion that they cannot be bound by the annexation agreement because they own only a portion of the annexed property defies the rules of statutory interpretation. The Village argues that defendants' proposed interpretation impermissibly reads into section 11-15.1-4 of the Municipal Code a limitation or exception that does not exist. The Village argues that nowhere in section 11-15.1-4 of the Municipal Code does it state that, for an annexation agreement to be binding on a successor owner, the successor owner must own the entire parcel annexed. We agree.

¶ 50        "When construing a statute, the cardinal rule, to which all other rules and canons are subordinate, is to ascertain and give effect to the true intent of the legislature." *Nelson v. Kendall County*, 2014 IL 116303, ¶ 23. "The best evidence of legislative intent is the language used in the statute itself, which must be given its plain, ordinary[,] and popularly understood meaning." *Id.* "The statute should be evaluated as a whole, with each provision construed in connection with every other relevant section." *Id.* When a statute's language is clear, the language must be given effect without resort to other aids of statutory construction. *Id.* "[C]ourts may not depart from a statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express." *People v. Burge*, 2021 IL 125642, ¶ 20.

¶ 51        As iterated in the annexation agreement, annexation agreements further the orderly growth of municipalities, enable municipalities to oversee the annexed area's development, and serve the municipality's best interests. An annexation agreement inures to the benefit of the Village and its residents, promotes the sound planning and development of the Village, and enhances the general welfare of the people of the Village. See *Village of Orland Park v. First Federal Savings & Loan Ass'n of Chicago*, 135 Ill. App. 3d 520, 526 (1985) (annexation agreements serve to further important governmental purposes; discourage fragmentation and

proliferation of special districts; encourage expanding municipal areas; and "do so uniformly, economically, efficiently and fairly, with optimum provisions made for the establishment of land use controls and necessary municipal improvements including streets, water, sewer systems, schools, parks, and similar installations").

¶ 52    "It is well established that the legislature alone has the authority to allow or require the alteration of municipal boundaries by annexation or otherwise." *In re Petition to Annex Certain Territory to North Barrington*, 144 Ill. 2d 353, 361 (1991). Our legislature has provided for the alteration of municipal boundaries in division 15.1 of article 11 of the Municipal Code.

¶ 53    Section 11-15.1-1 of the Municipal Code provides that municipalities may enter into agreements with landowners in unincorporated territories to annex the land to the municipalities and that such agreements are binding for periods not exceeding 20 years. 65 ILCS 5/11-15.1-1 (West 2002). Such an agreement annexes land to the municipality, thereby subjecting it to the municipality's ordinances, control, and jurisdiction. *Id.* § 11-15.1-2.1.

¶ 54    Annexation agreements, including preannexation agreements like the annexation agreement here, wherein a municipality agrees with the record landowners to annex the land in return for contributions of land or monies or both, among other things, are authorized by section 11-15.1-2 of the Municipal Code. *Id.* § 11-15.1-2. Generally, section 11-15.1-2 of the Municipal Code provides that any annexation agreement may allow for the annexation of territory to the municipality; the continuation of any ordinance relating to subdivision controls, zoning, and official plan; building, housing, and related restrictions; a limitation upon permit fee increases; contributions of either land or monies or both to the municipality and other governmental bodies; the granting of utility franchises for such land; the abatement of property taxes; and any other matter not inconsistent with the provisions of the Municipal Code nor forbidden by law. *Id.*

¶ 55    Section 15.1-4 of the Municipal Code addresses successor liability pursuant to an annexation agreement and provides:

"Any annexation agreement executed pursuant to this [d]ivision 15.1 *** shall be binding upon the successor owners of record of the land which is the subject

- 16 -

of the agreement and upon successor municipal authorities of the municipality and successor municipalities." *Id.* § 11-15.1-4.

The plain language of division 15.1 of article 11 of the Municipal Code reveals the legislative intent to encourage the natural and orderly development of annexed areas among successive owners of the land that has been annexed to a municipality. See generally *In re Petition to Annex Certain Territory to North Barrington*, 144 Ill. 2d at 365-66 (contiguity requirement in the annexation statute permitted the natural and gradual extension of municipal boundaries to areas that adjoin each other in a reasonably substantial physical sense). "It is axiomatic that a party cannot circumvent the purpose of the [annexation] statute by doing indirectly what he cannot do directly." *In re Petition of Kildeer to Annex Certain Territory*, 124 Ill. 2d 533, 547 (1988).

¶ 56    Black's Law Dictionary defines "successor" as "[s]omeone who succeeds to the office, rights, responsibilities, or place of another; one who replaces or follows a predecessor." Black's Law Dictionary 1732 (11th ed. 2019). The American Heritage Dictionary offers a similar definition: "[o]ne that succeeds another." American Heritage Dictionary of the English Language 1728 (4th ed. 2000). This same dictionary defines "succeed" as "to come after and take the place of." *Id.* Indeed, that the plain meaning of "successors" includes defendants is revealed by the record here. Putting aside whether it amounted to an evidentiary admission, defendants, after being served with the Village's initial complaint, filed a motion to dismiss stating that they "along with dozens of lot owners *** are the successors in interest" of the land comprising the subdivision here.

¶ 57    In this case, defendants acquired title to the undeveloped land at issue through Plank Road, which acquired title from the "[l]andowner," *i.e.*, the Trustee and the Roods, who had entered into the annexation agreement with the Village. "[T]he land which is the subject of the agreement," pursuant to the plain language of section 11-15.1-4 of the Municipal Code consists of the land annexed. Here, defendants' property was annexed to the Village pursuant to the annexation agreement.

¶ 58    Accordingly, we reject defendant's argument that the "the land which is the subject of the agreement" language found in the Municipal Code can only mean the land in its entirety and that, even though the land at issue here is included in the

- 17 -

description of the land that is the subject of the agreement, the covenants found in the annexation agreement are not binding on them. This court has historically recognized covenants running with the land even when the land had been apportioned. See *Natural Products Co. v. Dolese & Shepard Co.*, 309 Ill. 230, 234-35 (1923) (when deed was executed, the defendant owned many lots, some of which had been sold to persons not parties to the suit, who would have the right to enforce covenant running with the land). Therefore, we agree with the appellate court's conclusion that defendants were "successor owners of record of the land which is the subject of the agreement" (see 65 ILCS 5/11-15.1-4 (West 2002)), even though they owned only a portion of the original configuration.

¶ 59                                    2. Annexation Agreement

¶ 60        "[A] 'basic rule of the construction of contracts and a material part of every contract is that all laws in existence when the contract is made necessarily enter into and form a part of it as fully as if they were expressly referred to or incorporated into its terms.' " *Sproull v. State Farm Fire & Casualty Co.*, 2021 IL 126446, ¶ 20 (quoting *Illinois Bankers Life Ass'n v. Collins*, 341 Ill. 548, 552 (1930)); see also *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 217 (1997) ("As a general principle of contract law, statutes and laws in existence at the time a contract is executed are considered part of the contract."). Accordingly, section 11-15.1-4 of the Municipal Code is considered part of the annexation agreement, and thus, the annexation agreement is binding on defendants.

¶ 61        Defendants, as successor owners, have the right to accept the benefits of the annexation agreement and are required to take notice of it and be bound by it. *Meeghan v. Village of Tinley Park*, 52 Ill. 2d 354, 359 (1972) (party to annexation agreement, including successor owners, were empowered to enforce or compel performance of annexation agreement within statutory period). Having concluded that statutory authority requires that the annexation agreement is binding upon defendants, as "successor owners of record of the land which is the subject of the agreement" (see 65 ILCS 5/11-15.1-4 (West 2002)), we turn to the annexation agreement to consider its specific language, its allocation of duties and obligations among the parties, and its provisions' applicability to defendants. The parties and the appellate court cited *Doyle*, *Yorktown*, and *Elgin* as guiding cases wherein the

court addressed whether successor owners of record were bound by annexation agreement provisions. We note, however, that each involved different annexation agreements, and all are necessarily limited to their contract-specific facts. Nevertheless, we address each case in turn.

¶ 62    Akin to their statutory argument, defendants cite *Doyle* to argue that, because the annexation agreement did not expressly provide that it was binding on successor owners of the subject property, *or any portion thereof*, then its provisions regarding development were binding only on successor owners of the subject property in its entirety. The Village, citing *Yorkville*, argues that there are no magic words to effect successor liability and that, when the annexation agreement is read in its entirety, it is clear that the drafters of the annexation agreement contemplated that the subject property would be subdivided and developed in phases, potentially by more than one developer. As such, the Village urges, the annexation agreement continues to apply to a subsequent owner who owns only a portion of the undeveloped property.

¶ 63    Similar to statutory construction, when construing a contract, the primary objective is to give effect to the contracting parties' intent. *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007). "A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Id.* at 233. "Moreover, because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Id.* "The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself." *Id.*

¶ 64    In the case *sub judice*, section 28, subsection I, of the annexation agreement provides that all of its provisions are binding upon successors: "All terms and provisions of this Agreement shall be binding upon, inure to the benefit of, and be enforceable by the parties hereto, their heirs, executors, administrators, *successors*[,] and assigns." (Emphasis added.)

¶ 65    In *Doyle*, the Doyles' house was damaged by faulty storm drains, which were outside the scope of their contract with the developer of the subdivision, Malone & Maloney, Inc. (Malone). *Doyle*, 2018 IL App (1st) 170357, ¶ 4. Accordingly, the Doyles filed suit, alleging that Malone breached its 1990 annexation agreement with the municipality to install a sewage system that was adequate to properly drain

water from properties in the subdivision. *Id.* ¶ 17. The Doyles claimed that they could enforce the annexation agreement as successor owners of record, citing the annexation agreement's language that it " 'shall be binding upon *** successor owners of record of the [s]ubject [p]roperty.' " *Id.* In *Doyle*, the Appellate Court, First District, aptly noted that, if the Doyles were considered the successor owners of the property pursuant to the Municipal Code, they would succeed to Malone's interest in the annexation agreement, not to the municipality's, and thus, they could not sue Malone (in whose shoes they would be standing) for breach of the annexation agreement. *Id.* ¶ 32 n.3.

¶ 66    Nevertheless, the appellate court also rejected the Doyles' argument that they were "successor owners of record" of the subdivision under the annexation agreement and the Municipal Code based on the annexation agreement's successor liability clause. *Id.* ¶ 30. The appellate court stated:

"If the drafters of the agreement intended to confer successor status upon each and every purchaser of a lot within the subdivision (as opposed to, say, a developer who purchased the entire subdivision property from Malone), the agreement would have said 'successor owners of record of the [s]ubject [p]roperty *or any portion thereof*.' " (Emphasis in original.) *Id.*

The appellate court continued: "the statute refers to 'successor owners of record of the land which is the subject of the agreement' (65 ILCS 5/11-15.1-4 West 2012)) but makes no reference to those who purchase only a small portion of that land." *Id.* ¶ 31.

¶ 67    We agree with the appellate court in this case that *Doyle* presented an irregular and easily distinguishable fact pattern wherein the residential homeowner sought to stand in the shoes of the developer and simultaneously sue the developer (*id.* ¶ 32 n.3). 2022 IL App (2d) 200780, ¶ 51. Nevertheless, we explicitly reject the appellate court's holding in *Doyle* to the extent that the court held that a purchaser of less than the whole of property annexed pursuant to an annexation agreement cannot be considered subject to the agreement as a "successor owner[ ] of record of the land which is the subject of the agreement" pursuant to the Municipal Code (65 ILCS 5/11-15.1-4 (West 2002)) or an annexation agreement.

¶ 68    The *Doyle* court expressed concern that, if it adopted the Doyles' interpretation of the annexation agreement and the statute, "then each and every homeowner in the subdivision would succeed to Malone's interest in the property" and be bound to its development obligations. 2018 IL App (1st) 170357, ¶ 32. However, we find Doyle's stated concern *obiter dictum*, limited to its irregular facts, and inapplicable here. Each annexation agreement, which is binding upon successor owners of record of the land which is the subject of the annexation agreement (65 ILCS 5/11-15.1-4 (West 2002)), must be construed pursuant to its own provisions.

¶ 69    For example, *Yorkville* presented a different, contract-specific scenario from *Doyle*. In *Yorkville*, the defendants claimed that their purchases of subdivision lots from the original developer made them merely successor "owners" under the annexation agreement with no duty to complete public improvements and develop the property. 2019 IL App (2d) 180230, ¶ 76. The named parties in the annexation agreement were the city, the "owners," and the "developer" responsible for constructing the public improvements for the subdivision and furnishing letters of credit to guarantee completion. *Id.* ¶ 7. Section 9 of the agreement referred to the rights and duties of the developer and all successor developers of the property " 'or any parcel or phase thereof.' " (Emphasis omitted.) *Id.* ¶ 99. The successor-liability provision in section 22 of the annexation agreement provided that it " 'shall inure to the benefit of and be binding upon the [owners], [developer] and their successors in title and interest, and upon the [city,] and any successor municipalities of the [city],' " that it shall run with the land, but that " 'the obligations and duties of [owners] and [developer] hereunder shall not be deemed transferred to' " any purchaser of an empty lot or a lot improved with a dwelling unit who acquires it for residential occupation. *Id.* ¶ 7. Section 19 of the annexation agreement stated that development duties were not the responsibility of the owners but of the developer or future developer of the property, thereby binding a successor developer in the same manner that it bound the original developer. *Id.* ¶ 80.

¶ 70    In *Yorkville*, the Appellate Court, Second District, rejected the defendants' argument that they did not succeed to the duties of the original developer because they purchased less than the entire portion of land. *Id.* ¶ 107. The appellate court distinguished *Doyle*, holding that sections 9 and 22 indicated that development duties could indeed fall on a developer owning less than the entire property, in which case the liability would be proportionate to the amount of property that the

- 21 -

developer owns. *Id.* ¶ 99. The appellate court concluded that the annexation agreement "allow[ed] for the possibility of multiple successor developers, which would be jointly responsible for fulfilling the duties of the original developer." *Id.* ¶ 107. The *Yorkville* court further held:

> "Not uncommonly, a unitary tract of land governed by an annexation agreement is later divided and sold to different developers, as happened in this case. The public policy in favor of ensuring the fulfillment of an annexation agreement [citation] would be frustrated if the succession of duties under section 11-15.1-4 continued only as long as the land remained under common ownership." *Id.* ¶ 100.

¶ 71        *City of Elgin v. Arch Ins. Co.*, 2015 IL App (2d) 150013, presented yet another contract-specific fact pattern. In *Elgin*, the annexation agreement required the original developer, identified as the " '[o]wner' " or " '[d]eveloper' " in the annexation agreement, to complete public improvements for a residential planned development. *Id.* ¶ 3. The annexation agreement expressly stated that the obligations to construct public improvements necessary to serve the development under the agreement constituted covenants that would run with the land and that the agreement would be binding on any successors of " 'all or any part of' " the property, as well as on any " 'successors in title of the [d]eveloper.' " *Id.* Paragraph 45 of the annexation agreement also stated that sale of the property during the 20-year term would release the developer from all obligations and responsibilities to the sold portion and that those obligations would be assumed by the purchaser. *Id.*

¶ 72        Subsequent purchasers of unplatted and unimproved neighborhoods refused to complete the public improvements required under the agreement. *Id.* ¶¶ 6-7. With regard to whether the subsequent developers were liable to complete the obligations of the original developer under the annexation agreement, the circuit court had agreed that the obligation to complete the public improvements was a covenant that ran with the land. *Id.* ¶ 21. To analyze the pleadings, the appellate court accepted the circuit court's holding, acknowledged that the following comments were not a final determination of the subsequent developer's liability, but stated:

> "The [annexation agreement], which was recorded shortly after it was entered into, clearly provides that any subsequent development of the property must comply with the terms therein. The agreement provides that it is binding on

successors and assigns and that its terms constitute a covenant running with the land. Moreover, state law likewise provides that annexation agreements 'shall be binding upon the successor owners of record of the land which is the subject of the agreement.' 65 ILCS 5/11-15.1-4 (West 2012). On the record before us, [the subsequent developer's] successor liability would appear to be a matter of public record and statutory law, which is incorporated into every contract unless the contract provides to the contrary. [Citation.]" *Id.* ¶ 21.

¶ 73    The appellate court continued:

"Paragraph 45 does not impose a universal and unlimited obligation to make all improvements anywhere in the development upon anyone who purchased property in the development. Rather, it imposes upon purchasers the obligations 'of the [d]eveloper *** for the parcel sold.' Thus, the obligations imposed upon any particular purchaser depend upon the obligations of [the original developer] that remain unsatisfied with respect to the specific 'parcel sold.' If these obligations have already been satisfied with respect to the parcel—as would be the case where [the original developer] or some other entity had already completed the improvements at issue with respect to the homes that were sold— the individual purchasing homeowners would not be subject to any liability under paragraph 45. Accordingly, they would not have an interest requiring protection." *Id.* ¶ 40.

Thus, as noted by the appellate court here, the appellate court in *Elgin* also declined to subscribe to the *Doyle* court's concern that conferring successor status on those who purchase a portion of the annexed property would have the unintended consequence of burdening ordinary homeowners with the entirety of the municipal development responsibilities under the annexation agreement (*id.*). 2022 IL App (2d) 200780, ¶ 53.

¶ 74    We further agree with the appellate court that the annexation agreement here contemplated that the annexed property would be divided and sold, potentially to different landowners, who would be proportionally bound by the annexation agreement. The annexation agreement clearly sets forth that the annexed property would be developed as a subdivision in stages or phases. Multiple provisions in the annexation agreement enumerate an end to any owner's obligation to participate in the property's development. Sections 7, 9, and 10, covering improvements for

storm drains, well and water supply, and roadways, each provide that, upon proper completion, the Village shall promptly accept the improvements and thereafter maintain them. As aptly noted by the appellate court, these provisions reveal that, following completion and acceptance by the Village of any stage or phase of development, the responsibility for the improvements will fall upon the Village and not with any subsequent purchaser.

¶ 75　　In this case, reading the annexation agreement as a whole, as we are required to do, we find that the plain language of the annexation agreement required its provisions to be binding and enforceable on the parties' successors. Defendants are successors in title to the landowner in the agreement who agreed to development obligations. The obligations imposed upon any particular purchaser depend upon the obligations of the original developer that remain unsatisfied with respect to the specific parcel sold. See *Elgin*, 2015 IL App (2d) 150013, ¶ 40. If the obligations have already been satisfied, the individual purchasing homeowners would not be subject to any liability under the annexation agreement. *Id.*

¶ 76　　Section 14 provides that, in lieu of a construction bond or development bond or bonds, the Village will require an irrevocable letter of credit from a financial institution to guarantee construction and quality of all public facilities to be constructed in any stage or unit of development for which approval is sought. Section 14 provides that, as the landowner completes items within each letter of credit, the letter of credit shall be abated accordingly.

¶ 77　　As noted by the appellate court, section 14 is workable in the event that multiple developers separately own undeveloped portions of the subject property. 2022 IL App (2d) 200780, ¶ 57. Defendants purchased the property with full knowledge of the covenants and obligations to the Village. Pursuant to the annexation agreement, the Village's action seeks damages or requests a letter of credit in an amount specific to the stage of development, for roadways only, and in accordance with defendants' proportion of ownership. We conclude that the Village has sufficiently pleaded that defendants are successor owners of record bound by the terms of the annexation agreement and, as such, its complaint should have survived dismissal. Accordingly, because defendants are no longer the prevailing party, they are not entitled to attorney fees and costs pursuant to any prevailing-party provision in the

annexation agreement.

## ¶ 78                        C. Specific Performance

¶ 79        Defendants argue, as an alternative basis to partially affirm the circuit court's dismissal order, that the Village's requests for specific performance in counts III and IV of its third amended complaint fail because the Village has an adequate remedy at law under its breach of contract claim.

¶ 80        Counts III and IV of the Village's third amended complaint sought specific performance of the contract, requesting the circuit court to order defendants to issue an irrevocable letter of credit to the Village from a financial institution to guarantee completion of the roadway improvements contemplated in the annexation agreement. Section 11-15.1-4 of the Municipal Code provides that any party to an annexation agreement "may by civil action, mandamus, injunction[,] or other proceeding, enforce and compel performance of the agreement." 65 ILCS 5/11-15.1-4 (West 2002). We agree with the appellate court that, because the Municipal Code expressly authorizes specific performance as a remedy, the Village's requests remain viable despite the availability of other avenues of relief. See *People ex rel. Carpentier v. Goers*, 20 Ill. 2d 272, 276 (1960) (statute expressly authorizing issuance of injunction negated requirement to show inadequate remedy at law); see generally *City of Shelbyville v. Shelbyville Restorium, Inc.*, 96 Ill. 2d 457, 458 (1983) (city brought action seeking money damages and order compelling home builder to construct certain streets in subdivision as required by ordinance); *Dolan v. Brown*, 338 Ill. 412, 418 (1930) (where covenant running with land appeared in chain of title and record gave notice to purchaser of binding force of covenant, court of equity will interpose by injunction, thereby indirectly enforcing the performance of a negative covenant by prohibiting its breach).

## ¶ 81                        III. CONCLUSION

¶ 82        For the foregoing reasons, we conclude that the circuit court erred in determining that defendants were not bound by the terms of the annexation agreement because they owned only a portion of the land that was subject to the annexation agreement. Accordingly, the circuit court improperly dismissed the

Village's actions against defendants and improperly awarded defendants attorney fees as a prevailing party under the annexation agreement. Instead, we agree with the appellate court's opinion and affirm the appellate court's judgment reversing the circuit court's decision. We thereby reverse the circuit court's judgment dismissing the Village's third amended complaint, vacate the circuit court's award of attorney fees, and remand to the circuit court for further proceedings consistent with this opinion.

¶ 83        Appellate court judgment affirmed.

¶ 84        Circuit court judgment reversed.

¶ 85        Cause remanded.