NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 230669-U

NOS. 4-23-0669 and 4-23-0670 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 2, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* R.D. and A.D., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
|       Petitioner-Appellee, | ) | Nos. 20JA343 |
|       v. | ) |       20JA344 |
| Tabitha A., | ) | |
|       Respondent-Appellant). | ) | Honorable |
| | ) | Francis M. Martinez, |
| | ) | Judge Presiding. |

_____

JUSTICE KNECHT delivered the judgment of the court.
Justice Cavanagh concurred in the judgment.
Justice Steigmann specially concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed the trial court's judgment terminating respondent's parental rights, holding she failed to establish her claim of ineffective assistance of counsel.

¶ 2    The State filed motions to terminate the parental rights of respondent, Tabitha A., to her minor children, R.D. (born in 2019) and A.D. (born in 2017). The parental rights of the minors' father are not at issue in this appeal. He appealed the termination of his parental rights in appellate court case Nos. 4-23-0636 and 4-23-0637. The trial court found respondent unfit and later determined it was in the minors' best interest to terminate her parental rights. In this consolidated appeal, respondent argues her counsel provided ineffective assistance at the permanency hearings and at the fitness hearing. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                              A. The Adjudicatory Proceedings

¶ 5          On September 4, 2020, the State filed petitions seeking to adjudicate the minors neglected under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(a), (b) (West 2020)). The State alleged the minors were neglected because (1) respondent's mental health issues prevented her from properly parenting, thereby presenting a risk of harm to the minors (*id.* § 2-3(1)(b)), (2) the minors' parents failed to provide proper support, education, or medical care for R.D. in that R.D. was not receiving the required medication for his heart condition (*id.* § 2-3(1)(a)), and (3)the minors' father allowed respondent to care for the minors for over one week after being told not to leave them in her care (*id*. § 2-3(1)(b)).

¶ 6          On September 8, 2020, the parties waived a shelter care hearing, and the trial court awarded temporary custody and guardianship of the minors to the Illinois Department of Children and Family Services (DCFS). At the adjudicatory hearing on February 24, 2021, respondent stipulated to count I of the petition, and the State voluntarily dismissed counts II and III. The court found the minors neglected based on a statement of facts filed by the parties.

¶ 7                              B. The Permanency Proceedings

¶ 8          Following the May 21, 2021, dispositional hearing, the trial court found respondent unfit or unable to have custody of the minors until she received the recommended services. The court determined temporary custody and guardianship would remain with DCFS.

¶ 9          Over the two years that followed, the trial court conducted several permanency hearings. After the first hearing on October 14, 2021, the court entered an order finding respondent had made reasonable efforts toward the permanency goal. The goal remained for the minors to return home within a period not to exceed one year. At the next hearing on April 13, 2022, the court determined respondent had failed to make reasonable efforts or reasonable

- 2 -

progress, but the goal remained for the minors to return home. The court also reminded both parents they were expected to participate in the minors' medical appointments.

¶ 10    On January 4, 2023, the trial court held another permanency hearing where the State argued respondent had not made reasonable efforts or reasonable progress toward the return of the minors. The State noted, out of nine drug screens during the relevant period, respondent failed to appear for four, tested positive on one, and tested negative on four. The positive drug screen indicated use of cocaine, amphetamine, and methamphetamine. The State also noted visitation had been inconsistent and respondent had been discharged unsuccessfully from her parenting classes. Respondent's counsel argued the court should find respondent made reasonable efforts and asked the court to defer judgment on her progress. Counsel noted respondent had engaged in counseling, and he asserted she had trended toward negative drug screens at the end of the relevant time period. Counsel also asserted respondent was on wait lists for counseling and parenting education services. Following the hearing, the court found respondent had not made reasonable efforts or reasonable progress. The goal remained for the minors to return home, but the court indicated it would be considering a goal change at the next permanency hearing if the parents did not show improvement.

¶ 11    At the final permanency hearing on April 13, 2023, the State asked the trial court to take judicial notice of the permanency hearing report and the service plan. Respondent appeared by Zoom for the hearing, and respondent's counsel asked to call her to testify. The court stated respondent had been "sort of floating around her apartment or wherever she is. I need her to sit down somewhere." After respondent sat down and prepared to testify, the court noticed another person in the background. When the court indicated that person would have to leave before respondent testified, respondent stated, "Hang on. This is going to make me really

f*** antsy." The court then decided respondent was not "in any shape to testify." Respondent's counsel provided a proffer as to her testimony, stating she had engaged in domestic violence classes, she was required to get a psychological examination before continuing individual counseling, she had not been asked to perform a drug screen recently, and some of her missed visits were due to the children being sick and she had communicated with her caseworker on those occasions.

¶ 12      The State argued respondent failed to make reasonable efforts or reasonable progress and asked the trial court to change the goal to substitute care pending court determination of termination of parental rights. Respondent's counsel asked for the goal to remain returning the minors home given "what my client's done so far, even though some things are outstanding." The court noted approximately 25 months had passed since the adjudication of neglect and respondent had failed to make reasonable efforts or reasonable progress toward the return of the minors up to that point. The court, therefore, changed the goal to substitute care pending court determination of termination of parental rights.

¶ 13                        C. The Termination Proceedings

¶ 14      On May 19, 2023, the State filed motions to terminate respondent's parental rights to both minors. The motion for each minor alleged respondent was an unfit parent because she (1) failed to make reasonable efforts to correct the conditions forming the basis for their removal during a nine-month period after the adjudication of neglect (750 ILCS 50/1(D)(m)(i) (West 2022)) and (2) failed to make reasonable progress toward their return to her care during a nine-month period after the adjudication of neglect (*id.* § (1)(D)(m)(ii)). The State alleged nine-month periods from October 14, 2021, to July 14, 2022, and from July 13, 2022, to April 13, 2023.

¶ 15                              1. *The Fitness Hearing*

¶ 16        Respondent was not present at the fitness hearing held on June 21, 2023. A copy

of an e-mail respondent sent to her caseworker was provided to the trial court. The court

described the e-mail as "almost a farewell note, in terms of appearing," and found respondent

had waived her right to be present.

¶ 17        The State called Monica Gallagher, who testified she had been employed by

Youth Service Bureau (YSB) for approximately two years. Her duties and responsibilities

included observing home visits, meeting monthly with parents to ensure they were participating

in services, having parents complete drug tests, and providing documentation and court reports.

Gallagher was assigned as the minors' caseworker in March 2022. A.D. was currently five years

old, and R.D. was three years old.

¶ 18        Gallagher identified People's exhibit No. 1 as respondent's integrated assessment

completed on December 2, 2020. The exhibit was admitted without objection. The integrated

assessment stated the primary concerns with respondent's ability to safely parent the minors

involved her "mental health difficulties, chronic substance and alcohol abuse, concerns of

interpersonal violence and limitations in judgment especially related to her child's medical

needs." Given those concerns, the integrated assessment recommended respondent participate in

medication monitoring and individual therapy, abstain from substance and alcohol use,

participate in substance abuse treatment and random drug testing, participate in parenting

education, and participate in a domestic violence support program for victims.

¶ 19        Gallagher identified People's exhibit Nos. 2 through 6 as respondent's service

plans dated March 9, 2021, September 5, 2021, March 4, 2022, September 14, 2022, and March

1, 2023. The service plans were admitted without objection. Gallagher testified the service plans

detailed the services for respondent and the tasks to be completed. According to Gallagher, service plans are reviewed every six months at a minimum and submitted for permanency hearings.

¶ 20     Gallagher testified the service plans recommended respondent complete a substance abuse assessment and drug testing, engage in parenting education, complete a mental health assessment and counseling, and cooperate with medication monitoring. The service plans also recommended respondent attend the minors' medical appointments, participate in visitations, and cooperate with her caseworker.

¶ 21     Gallagher testified she attempted to initiate contact with respondent frequently either in person or by e-mail, phone, or text message. When asked whether respondent stayed in contact with her, Gallagher stated it "varied month to month," but "[m]ore so, there was a big lack of communication." Gallagher also testified respondent had not completed a mental health assessment. Respondent completed the recommended domestic violence services. Respondent was asked to complete random drug testing a "couple times a month." Gallagher testified respondent completed less than half of those tests and some of the tests she completed came back positive for tetrahydrocannabinol and one was positive for cocaine. Respondent had not completed the substance abuse assessment required before starting any treatment.

¶ 22     Gallagher further testified she had concerns about respondent's parenting skills. When Gallagher observed visitations, respondent looked at her phone while the children played. If they misbehaved, respondent would usually have R.D. sit in a corner in a time-out for most of the visit. Gallagher did not observe any engagement with the children or parenting skills. Respondent was referred to a parenting class when the case was opened in 2020, and she was later referred to classes at YSB, but she did not complete either class. Gallagher testified

respondent attended "[m]aybe half to less than half" of the visits with the minors. Her last visit with the minors was in March 2023. Gallagher also testified R.D. has a heart condition requiring special care. Respondent had participated in one training appointment on his condition.

¶ 23      Gallagher testified respondent still needed to complete "[a] substance abuse assessment, her individual counseling, parenting, [and] domestic violence [services]." She further testified concerns about respondent's ability to safely parent the minors remained due to her "lack of consistency, communication and the motivation to work towards getting her children home. The positive drops, the lack of going to drops are all major concerns."

¶ 24      On cross-examination, respondent's counsel inquired whether Gallagher had earlier testified respondent completed her domestic violence services. Gallagher clarified that respondent engaged in those services, but she did not receive confirmation of respondent's completion of services. Gallagher acknowledged respondent mentioned transportation as "an overall issue," but she asserted respondent did not "really use that as the reason" for not attending visits or performing drug drops.

¶ 25      Following Gallagher's testimony, the State rested. Respondent did not present any evidence.

¶ 26      The trial court took the matter under advisement and announced its decision at a hearing on July 19, 2023. Respondent failed to appear at the hearing, and the court found she waived her right to be present. The court began by noting the State alleged respondent was unfit on two grounds, failure to make reasonable efforts to correct the conditions forming the basis for the minors' removal (count I) and failure to make reasonable progress toward their return (count II). The court found the State proved both counts by clear and convincing evidence. The court observed respondent did not complete her mental health services and she had "positive drug tests

during the life of this case, and there were also a number of drug tests referred but not engaged in." The "lack of effort negatively affected progress to be made." The court also noted respondent was disengaged during visitations and failed to complete parenting education. Accordingly, the court concluded the State met its burden of proving respondent unfit by clear and convincing evidence.

¶ 27                                2. *The Best Interest Hearing*

¶ 28            The trial court proceeded to the best interest hearing on July 19, 2023. Following the presentation of evidence and the parties' arguments, the court found it was in the minors' best interest to terminate respondent's parental rights.

¶ 29            This appeal followed.

¶ 30                                II. ANALYSIS

¶ 31            On appeal, respondent contends she received ineffective assistance of counsel at the permanency hearings and at the fitness hearing. The State initially claims this court lacks jurisdiction to consider respondent's arguments involving the permanency hearings. We address our jurisdiction first because it is a threshold issue. See *Village of Kirkland v. Kirkland Properties Holdings Co.*, 2023 IL 128612, ¶ 37, 221 N.E.3d 300 (stating jurisdiction is a threshold issue to be addressed before considering the merits of an appeal).

¶ 32                                A. Jurisdiction

¶ 33            The State contends in *In re J.J.*, 316 Ill. App. 3d 817, 737 N.E.2d 1080 (2000), the appellate court held a trial court's findings and orders entered following a permanency review hearing are immediately appealable. The State argues this court lacks jurisdiction to consider respondent's claims from the permanency review proceedings because she failed to file a notice of appeal within 30 days after the last permanency review order was entered on April 13, 2023.

- 8 -

The State also asserts this court lacks jurisdiction to consider respondent's claims involving the permanency proceedings because her notice of appeal only specified the July 19, 2023, order terminating her parental rights.

¶ 34    In *J.J.*, the respondent claimed the trial court erred in failing to make the required statutory findings and she received ineffective assistance of counsel at the permanency review hearings. *Id.* at 825. To confer jurisdiction to review her claims, the appellate court held the respondent was required to appeal within 30 days following entry of the trial court's permanency review orders because they were immediately appealable. *Id.* at 826. The appellate court determined it lacked jurisdiction to consider the respondent's claims pertaining to the permanency hearings because she failed to file her notice of appeal within 30 days of the most recent permanency review order. *Id.*

¶ 35    The decision in *J.J.* does not support the State's argument in this case. The trial court's holding was based on the version of section 2-28(3) of the Juvenile Court Act in effect at the time, which provided, "Any order entered pursuant to this subsection (3) shall be immediately appealable as a matter of right under [Illinois] Supreme Court Rule 304(b)(1) [(eff. Feb. 1, 1994)]" (705 ILCS 405/2-28(3) (West 1998)). *J.J.*, 316 Ill. App. 3d at 826. The language relied upon by the court in *J.J.* was subsequently removed from the statute. See P.A. 95-182, § 5 (eff. Aug. 14, 2007). The version of section 2-28(3) applicable to this case does not include that language. See 705 ILCS 405/2-28(3) (West 2022). Thus, the *J.J.* court's basis for finding it lacked jurisdiction to consider the respondent's claims based on the permanency orders has been eliminated by the subsequent change to the statute. Additionally, while Rule 304(b)(1) provides for immediate appeals of certain orders, the permanency orders at issue here are not included within the rule's provisions.

¶ 36        The State's argument that we lack jurisdiction due to respondent's failure to specifically list the permanency orders in her notice of appeal is also not persuasive. In all proceedings under the Juvenile Court Act other than delinquency proceedings, appeals from final judgments are governed by the rules applicable to civil cases. Ill. S. Ct. R. 660(b) (eff. Mar. 12, 2021). Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017) provide for appeals from final judgments in civil cases. Under Rule 303(b)(2), a notice of appeal must "specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017). A notice of appeal confers jurisdiction on the appellate court to consider the judgments or parts of judgments specified. *Village of Kirkland*, 2023 IL 128612, ¶ 38. We construe notices of appeal liberally, however. *Id.* A notice of appeal confers jurisdiction to review an order not expressly listed if the order was a step in the procedural progression leading to the judgment specified in the notice of appeal. *Id*. ¶ 41.

¶ 37        In this case, respondent's notice of appeal specified the order terminating her parental rights. The trial court found respondent unfit on two grounds, including failure to make reasonable progress toward the return of the minors to her care. The permanency hearings involved a review of respondent's progress over a two-year period in addressing the conditions leading to the removal of the minors. If the court had found respondent made reasonable efforts and progress during those hearings, the motion for termination of parental rights would not have been filed. We find the permanency hearing orders were a step in the procedural progression leading to the order terminating respondent's parental rights. Accordingly, we have jurisdiction to consider respondent's claim of ineffective assistance of counsel at the permanency hearings.

¶ 38                              B. Counsel's Performance

¶ 39　　　　　　Respondent contends she was denied her right to effective assistance of counsel at both the permanency hearings and the fitness hearing. In proceedings under the Juvenile Court Act, parents have a statutory, not a constitutional, right to counsel. *In re Br. M.*, 2021 IL 125969, ¶ 41, 182 N.E.3d 693 (quoting 705 ILCS 405/1-5(1) (West 2016)). The statutory right to counsel implies the right to effective assistance. *Id.* ¶ 42.

¶ 40　　　　　　Illinois courts routinely apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), when considering claims of ineffective assistance of counsel in proceedings under the Juvenile Court Act. See *Br. M.*, 2021 IL 125969, ¶ 43; *In re A.P.-M.*, 2018 IL App (4th) 180208, ¶¶ 37-44, 110 N.E.3d 1126. To establish a claim of ineffective assistance under *Strickland*, a parent must show (1) counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability exists that, but for counsel's deficient performance, the result of the proceedings would have been different. *In re M.D.*, 2022 IL App (4th) 210288, ¶ 92, 193 N.E.3d 933. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *In re A.R.*, 295 Ill. App. 3d 527, 531, 693 N.E.2d 869, 873 (1998). "A reviewing court 'may dispose of an ineffective assistance of counsel claim by proceeding directly to the prejudice prong without addressing counsel's performance.' " *M.D.*, 2022 IL App (4th) 210288, ¶ 93 (quoting *People v. Hale*, 2013 IL 113140, ¶ 17, 996 N.E.2d 607).

¶ 41　　　　　　　　　　　　1. *The Permanency Hearings*

¶ 42　　　　　　While respondent contends her counsel provided deficient performance at the permanency hearings in multiple ways, including failing to inquire into the services being recommended or provided and failing to insist on testimony from the caseworker, respondent concedes she cannot show prejudice as a result of counsel's alleged shortcomings under the applicable *Strickland* standard. Instead, respondent argues we should apply the ineffective

assistance of counsel standard from *United States v. Cronic*, 466 U.S. 648 (1984), to presume prejudice in this case. The standard from *Cronic* has been applied in criminal cases as an alternative to *Strickland* and allows prejudice to be presumed if the defendant's counsel has entirely failed to subject the State's case to meaningful adversarial testing. *Id.* at 659-61. This court has previously found the *Cronic* standard is not applicable to termination of parental rights proceedings. *In re C.C.*, 368 Ill. App. 3d 744, 748, 859 N.E.2d 170, 172 (2006). In *C.C.*, this court reasoned it would be "counterintuitive to apply a test that depends upon a determination of whether the proceeding was sufficiently adversarial in nature when the legislature has specified that proceedings under the [Juvenile Court Act] are not meant to be adversarial in nature." *Id.* at 748 (citing 705 ILCS 405/1-5 (West 2004)). We believe our decision in *C.C.* is sound and respondent has not presented a persuasive argument to reconsider it. Accordingly, we decline to apply the *Cronic* standard to this case.

¶ 43          Respondent also asserts this court should alter the prejudice analysis from *Strickland* to examine only whether counsel's representation provided her "with the opportunity to demonstrate progress by ensuring that the services actually [gave her] a chance." Respondent has not supported her request to alter the applicable *Strickland* prejudice inquiry with relevant authority or persuasive reasoning. In the absence of a persuasive argument, we decline to adopt an alternative formulation of the *Strickland* prejudice standard for the permanency hearings in this case. Under *Strickland*, respondent bears the burden of demonstrating she was prejudiced by the alleged deficient performance. See *In re M.F.*, 326 Ill. App. 3d 1110, 1119, 762 N.E.2d 701, 709 (2002). We conclude respondent has failed to demonstrate a reasonable probability of a different outcome absent the alleged deficient performance of counsel at the permanency

hearings. Accordingly, respondent has not established the prejudice prong of *Strickland* and her claim of ineffective assistance of counsel during the permanency hearings fails.

¶ 44                                  2. *The Fitness Hearing*

¶ 45          Respondent also argues she received ineffective assistance of counsel at the fitness hearing. She contends her counsel provided deficient performance by (1) failing to effectively cross-examine Gallagher, the State's sole witness, (2) failing to effectively minimize the weight given to documentary evidence, and (3) failing to present any evidence in opposition to the termination motion.

¶ 46          In a proceeding to involuntarily terminate parental rights, the State must prove the parent is unfit by clear and convincing evidence. *In re Donald A.G.*, 221 Ill. 2d 234, 244, 850 N.E.2d 172, 177 (2006). In making this determination, the trial court considers whether the parent's conduct falls within one or more of the grounds of unfitness described in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *In re D.D.*, 196 Ill. 2d 405, 417, 752 N.E.2d 1112, 1119 (2001). "A parent's rights may be terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence." *In re Gwynne P.*, 215 Ill. 2d 340, 349, 830 N.E.2d 508, 514 (2005).

¶ 47          Here, the trial court found the State proved respondent was unfit by clear and convincing evidence on two grounds, including the failure to make reasonable progress toward the return of the children to her care during a nine-month period following the adjudication of neglect. The State alleged two nine-month periods, from October 14, 2021, to July 14, 2022, and from July 13, 2022, to April 13, 2023. Reasonable progress is measured by an objective assessment of a parent's progress toward reunification with the child during a given nine-month period, which includes compliance with the service plans and court orders. *In re C.N.*, 196 Ill. 2d

181, 216-17, 752 N.E.2d 1030, 1050-51 (2001). Reasonable progress will be found only if the parent's actions during the relevant period indicate the court will be able to return the child to the parent's care in the near future. *In re L.L.S.*, 218 Ill. App. 3d 444, 461, 577 N.E.2d 1375, 1387 (1991).

¶ 48    In finding respondent unfit, the trial court noted she (1) failed to complete her mental health services, (2) had positive drug tests throughout the case, (3) failed to complete her parenting education, and (4) was disengaged in visitation. The State presented substantial evidence establishing respondent's lack of progress in the required services, including Gallagher's testimony and the service plans. Respondent does not argue the evidence was insufficient to support the court's findings.

¶ 49    Respondent claims counsel failed to cross-examine Gallagher about alleged inconsistencies between her testimony and specific statements in the service plans. Respondent also argues counsel failed to minimize the weight of the service plans by identifying inconsistencies within those documents. However, the service plans were admitted into evidence. We presume the trial court considered all evidence admitted at the hearing in making its decision. *T2 Expressway, LLC v. Tollway, LLC*, 2021 IL App (1st) 192616, ¶ 38, 197 N.E.3d 236. The court was in a position to assess the evidence presented in Gallagher's testimony and the service plans and assign it the appropriate weight. See *People v. Evans*, 209 Ill. 2d 194, 211, 808 N.E.2d 939, 949 (2004) (stating the trier of fact assesses the credibility of the witnesses, determines the appropriate weight of testimony, and resolves conflicts or inconsistencies in the evidence).

¶ 50    Respondent also argues she was not promptly referred for services and was on waiting lists at times for parenting education and mental health counseling, but she does not identify any progress in completing those services over the prolonged duration of this case or

explain how the alleged deficient representation at the fitness hearing would have helped establish reasonable progress on those services. Additionally, some of respondent's claims of deficient performance, including those related to respondent's cooperation and completion of domestic violence services, are not directed at the trial court's specific findings on lack of reasonable progress. The court did not find a lack of reasonable progress based on those concerns.

¶ 51    Overall, respondent identifies many alleged instances of deficient performance, but she does not specifically demonstrate prejudice, *i.e.*, a reasonable probability of a different result absent the deficient performance. Satisfying the prejudice prong of an ineffective assistance claim requires a demonstration of actual prejudice, not simply speculation about possible prejudice. *People v. Patterson*, 2014 IL 115102, ¶ 81, 25 N.E.3d 526. The State presented strong evidence supporting the trial court's findings in this case. Respondent does not explain how her alleged claims of deficient performance would undermine the court's specific findings.

¶ 52    In sum, the record as a whole shows respondent failed to make reasonable progress toward the return of the children. As Gallagher testified, significant concerns remained about respondent's ability to safely parent the minors based on her "lack of consistency, communication and the motivation to work towards getting her children home. The positive drops, the lack of going to drops." Even accounting for the alleged deficiency of counsel, there is no reasonable probability of a different result given the strong evidence of respondent's failure to complete mental health counseling and parenting services, her continued problems with completing drug tests and positive drug tests, and her disengagement from visitation. Those concerns are all critical issues in this case and prevent returning the children to respondent's care.

The evidence confirms Gallagher's concerns about respondent's ability to safely parent the minors, and it shows respondent was nowhere near the point where the trial court could order returning the minors home in the near future. *L.L.S.*, 218 Ill. App. 3d at 461. Respondent has failed to demonstrate prejudice as a result of the alleged deficient performance. Accordingly, respondent has failed to establish her claim of ineffective assistance of counsel at the fitness hearing.

¶ 53                              III. CONCLUSION

¶ 54           For the reasons stated, we affirm the trial court's judgment.

¶ 55           Affirmed.

¶ 56           JUSTICE STEIGMANN, specially concurring:

¶ 57           Although I agree with the result in this case, my preference would be to not include any reference to the permanency hearings.