NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241491-U

NO. 4-24-1491

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 19, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* K.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
| Petitioner-Appellee, | ) | No. 22JA52 |
| v. | ) | |
| Gary S., | ) | Honorable |
| Respondent-Appellant). | ) | Talmadge "Tad" Brenner, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Doherty and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court granted appellate counsel's motion to withdraw and affirmed
the trial court's judgment, finding no arguable issue could be raised on appeal.

¶ 2    Respondent, Gary S., appeals from the trial court's dismissal of his petition for

relief from judgment under section 2-1401 of the Code of Civil Procedure (Code) (725 ILCS 5/2-

1401 (West 2022)). The section 2-1401 petition stemmed from the adjudicatory and dispositional

hearings, during which respondent's minor child, K.S. (born June 2018), was made a ward of the

court.

¶ 3    Appellate counsel moves to withdraw pursuant to *Anders v. California*, 386 U.S.

738 (1967). See *In re S.M.*, 314 Ill. App. 3d 682, 685-86 (2000) (applying *Anders* to proceedings

involving parental unfitness). Counsel contends he can make no meritorious argument on appeal.

Respondent has filed a response to counsel's motion to withdraw. After reviewing the record,

counsel's memorandum, and respondent's response, we grant the motion to withdraw and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5         On August 9, 2022, the State filed a petition for the adjudication of wardship as to K.S. , alleging the minor was neglected or abused in that his environment was injurious to his welfare pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2022)) due to (1) domestic violence between respondent and K.S.'s mother, Melissa S., and (2) K.S.'s home not meeting minimum living standards. (We note Melissa is not a party to this appeal.)

¶ 6         A shelter care hearing was scheduled for the same day. Respondent appeared with private counsel, Gerald Timmerwilke. Melissa was also present. Prior to the hearing, respondent filed a motion for substitution of judge as a matter of right, which was granted. The trial court referred the matter to the chief judge for reassignment and continued the shelter care hearing based on respondent's motion.

¶ 7         The shelter care hearing was held on September 2, 2022. The trial court placed temporary custody of K.S. with the Illinois Department of Children and Family Services (DCFS) and appointed the court-appointed special advocate (CASA) to designate the guardian *ad litem* (GAL). The adjudicatory hearing was scheduled for November 2, 2022.

¶ 8                              A. Adjudicatory Hearing

¶ 9         The adjudicatory hearing was continued to January 6, 2023, on the court's own motion, and then rescheduled for January 12, 2023.

¶ 10         At the January 12, 2023, hearing, the trial court addressed the appearances, noting "Mr. [John] Citro [(Melissa's attorney)] is in trial, so Mr. [Christopher] Pratt is covering that. For

the State—Mr. [Brett] Jansen [(assistant state's attorney)] is in jury trial with Mr. Citro, so Mr. [Joshua] Jones is covering for that." Because of the unavailability of counsel, the court continued the hearing to January 19, 2023, over no objection.

¶ 11　　　　The adjudicatory hearing was held on January 19, 2023. After testimony, the trial court found the allegations of the petition were proven and adjudicated the minor neglected as to both parents. A dispositional hearing was scheduled for February 23, 2023.

¶ 12　　　　　　　　B. Dispositional Hearing and Permanency Hearings

¶ 13　　　　Due to illness, the trial court rescheduled the dispositional hearing to March 2, 2023. On that date, the dispositional hearing was continued by agreement of the parties to April 13, 2023.

¶ 14　　　　At the April dispositional hearing, the trial court found respondent unfit to care for the minor, made the minor a ward of the court, placed guardianship with DCFS, and set the permanency goal to return home within 12 months.

¶ 15　　　　Permanency hearings were held on July 13, 2023, October 26, 2023, February 2, 2024, and May 9 and 23, 2024. At the May 23 hearing, the trial court changed the permanency goal to substitute care pending determination of termination of parental rights. The State filed a motion for termination of parental rights on May 31, 2024. On July 15, 2024, respondent filed an objection to the motion.

¶ 16　　　　　　　　　　C. Motion to Withdraw

¶ 17　　　　On July 23, 2024, Timmerwilke filed a motion to withdraw as respondent's counsel, citing a "breakdown in the financial arrangement." At the hearing, respondent objected to the motion to withdraw, stating he wished to terminate the relationship with Timmerwilke "on [his] terms." The trial court clarified respondent had no issue with Timmerwilke no longer

- 3 -

representing him, which respondent confirmed, and granted the motion to withdraw. Respondent asked the court if, though he wished to either hire or be appointed new counsel, he was permitted to file pleadings *pro se*. The court confirmed respondent was entitled to file pleadings.

¶ 18                              D. Respondent's Filings

¶ 19        Between August 7 and August 19, 2024, respondent filed nine pleadings, totaling 51 pages including attachments. The pleadings included, but were not limited to, requests for access to the record and transcripts, a petition for relief from judgment pursuant to section 2-1401, and various motions to dismiss.

¶ 20        On August 19, 2024, the trial court appointed the public defender's office to represent respondent, and Assistant Public Defender Betsy Bier entered an appearance. On September 5, 2024, the court held a status hearing, at which Bier informed the court respondent wished to represent himself. Respondent explained he felt he would need to forgo his prior filings if Bier continued to represent him because she would need a continuance to prepare the case. After discussing the schedule, respondent stated he wanted to present his own motions and did not want any delay. The court clarified for respondent Bier could not remain as standby counsel. Respondent was admonished and agreed to proceed *pro se*. A hearing on his motions was scheduled for September 20, 2024. The court directed respondent to submit a list of the motions he would like considered at the hearing.

¶ 21        Between September 5 and September 18, 2024, respondent filed eight pleadings, totaling 155 pages. Some of these filings included earlier pleadings as attachments. Included in the filings was a *pro se* pleading titled "Petition for Substitution of Judge-pursuant to 735 ILCS 5/2-1001(a)(3) 'Substitution for Cause.' " On September 19, 2024, the trial court continued the hearing for resolution of the petition.

¶ 22    From September 19 to September 23, 2024, respondent filed eight more pleadings, totaling 175 pages. Many of the pleadings were duplicative, contained copies of prior filings as attachments, or amended prior pleadings.

¶ 23    On September 27, 2024, the trial court denied the motion for substitution and a scheduling conference was set for October 8, 2024.

¶ 24    Between September 27 and October 7, 2024, respondent filed eight more pleadings, totaling over 600 pages. This included a motion for custody, which alone was almost 400 pages. Other pleadings included motions to disqualify CASA and the GAL and a motion for summary judgment of major issues. Again, many of these pleadings were duplicative and purported to amend prior pleadings.

¶ 25    On October 8, 2024, the trial court held a scheduling conference. The court set a hearing on all of respondent's filings for November 1, 2024. Respondent was directed to submit a list of the motions he wanted considered by October 14, 2024, and to include a basic summary of the motions and relief sought. The court also directed respondent to refrain from filing further pleadings after October 14.

¶ 26    Before the October 14 deadline, respondent filed a 42-page addendum to his section 2-1401 petition and a motion for a family conference. On October 16, 2024, respondent sought a good cause extension for filing his list of motions due to a technical error. (We note, if respondent thereafter submitted a list of motions for consideration, it does not appear in the record on appeal.)

¶ 27    Respondent continued submitting new filings. From October 16 to October 30, 2024, respondent filed 10 more pleadings, totaling 254 pages. Additionally, respondent filed a

notice of appeal, which this court docketed as appellate court case No. 4-24-1405. (The appeal was dismissed for failing to identify a final judgment. *In re K.S.*, 4-24-1405 (2024) (order))

¶ 28                    E. November Hearing on Respondent's Motions

¶ 29        On November 1, 2024, the trial court held the hearing on respondent's motions. The court organized respondent's filings into 10 categories for the hearing: (1) motions for records, transcripts, Americans With Disabilities Act of 2010 (42 U.S.C. § 12101 (2018)) accommodations, and similar motions; (2) motions on jurisdiction over the person; (3) a motion to intervene; (4) section 2-1401 pleadings (735 ILCS 5/2-1401 (West 2022)); (5) motions to dismiss under section 2-619 (*id.* § 2-619); (6) motions to dismiss under section 2-615 (*id.* § 2-615); (7) a motion for summary determination of major issues under section 2-1005(d) (*id.* § 2-1005(d)); (8) motions to disqualify the GAL and CASA; (9) a motion for a family conference; and (10) a motion to continue for counsel.

¶ 30        The GAL and State moved to strike respondent's filings after October 14, 2024, after the court's deadline. After summarizing the motions respondent filed after October 14, the trial court determined "almost everything filed after October 14 addresses an issue previously raised by [respondent]." The court therefore denied the request to strike those motions for violating the "technical deadline."

¶ 31        The trial court then addressed the categories of respondent's motions as follows.

¶ 32                    1. *Motions for Records and Transcripts*

¶ 33        As to the records and transcripts, the trial court explained to respondent a set procedure for him to access the record and transcripts in the circuit clerk's office and law library. Respondent was satisfied with the procedures set for access.

¶ 34                        2. *Jurisdiction*

¶ 35    As to jurisdiction over the person, respondent withdrew the issue as a separate filing and merged it with the section 2-1401 petition. Respondent argued, however, the trial court lacked subject matter jurisdiction due to his claims of purported fraud. He argued that fraud upon the court voids the proceedings, and "basically the Court doesn't have jurisdiction if it's fraud upon the Court. If it's an officer of the court that's brought fraud upon the Court, then that voids the proceedings." The court denied the challenge to personal jurisdiction under section 2-301(*id.* § 2-301), as there was no issue of service upon the parents. The court also found it had subject matter jurisdiction over the issues related to the abuse and neglect of a child. The court saw nothing else affecting its personal jurisdiction over the parties or subject matter jurisdiction.

¶ 36                     3. *Motion to Intervene*

¶ 37    On the motion to intervene, the trial court expressed confusion, as respondent was already part of the case. Respondent clarified he was challenging the way Timmerwilke withdrew from the case and its relation to the section 2-1401 petition. Respondent withdrew the motion to intervene.

¶ 38            4. *Motions to Dismiss Under Sections 2-615 and 2-619*

¶ 39    The trial court proceeded to take up the motions to dismiss under section 2-619. Specifically, the court addressed whether a dismissal was warranted under (1) subsection (a)(1) for lack of jurisdiction; (2) subsection (a)(5) because the proceedings were not commenced within the statute of limitations; (3) subsection (a)(7) because the claims asserted against defendant were unenforceable under the statute of frauds; and (4) subsection (a)(9) (*id.* § 2-619(a)(1), (a)(5), (a)(7)), the catchall subsection. Respondent clarified he intended the motions to dismiss as essentially amendments to his section 2-1401 petition. The court determined it had already addressed the issue of jurisdiction, respondent did not raise any issue under the statute of

limitations, and there was no contract involved for the statute of frauds to apply. Respondent otherwise agreed he wished to address the affirmative matters with his section 2-1401 petition.

¶ 40　　As to the motion to dismiss under section 2-615, based on respondent's question, the trial court clarified with respondent the differences between motions to dismiss under section 2-615 and section 2-619 and explained the "time ha[d] kind of passed" for a motion to dismiss under section 2-615. Respondent agreed with the court's explanation.

¶ 41　　　　　5. *Motion for Summary Determination of Major Issues*

¶ 42　　The trial court then turned to the motion for summary determination of major issues under section 1005(d). Respondent clarified the major issues he raised were the facts of his section 2-1401 petition. Respondent argued, "After a 30-day response period" for his section 2-1401 petition, "if there's no answer from the State, then basically everything in the pleadings are taken as true." Therefore, he was requesting summary judgment on the facts of his petition, such as his claim of a *per se* conflict of interest, given the State did not file a response within 30 days of his initial section 2-1401 petition. The State pointed out it had not filed a response for several reasons, including (1) orders respondent provide information to the court, which he did not comply with; (2) a lack of clarity in any of respondent's filings; and (3) the agreement all the motions would be taken up at the present hearing. The State stated, "There has been no response provided because it's been unclear as to what he's ever even filed and he has never provided this Court with what his pleadings even entail or what they set forth. That's why we are here today." The GAL expanded on the State's argument, stating, "[Respondent] somehow thinks he's secured for himself a waiver by lack of response through, quite frankly, this massive legal mumbo jumbo and word salad. I don't know how I'm supposed to respond to any of this stuff and further amendment after amendment after amendment."

¶ 43    The trial court pointed out summary determination is a "technical issue," and the first question to resolve is "what are the issues for which [respondent] is seeking summary determination?" The court stated it could not determine the issues on which respondent was seeking summary determination. The court denied the motion because it could not determine anything which was appropriate for summary determination "simply because [it could not] define the issues for which [respondent] is seeking summary determination."

¶ 44                    6. *Motions to Disqualify the GAL and CASA*

¶ 45    On disqualification of the GAL and CASA, respondent clarified he took issue with changes in who was representing CASA in the case. The GAL clarified that, although there had been staff changes with volunteers, CASA, as an organization, remained on the case. The trial court pointed out the order appointing CASA specifically allowed the director to designate a responsible person to serve in the capacity of a GAL and found nothing out of the ordinary or improper had occurred in the representation and denied the motions to disqualify.

¶ 46                    7. *Motions for Family Conference*

¶ 47    As to respondent's motion for a family conference under Illinois Supreme Court Rule 942 (eff. Oct. 1, 2021), respondent explained he filed the motion because he did not realize "there was a way for everybody to talk off the record" and that he believed "things could have or would have been different" if he had been given a "fair chance" for everyone to communicate. The trial court explained to respondent the procedure for family conferences under Rule 942, explained such a conference would be unhelpful at the current stage of proceedings, and denied the motion.

¶ 48                    8. *Motion to Continue for Counsel*

¶ 49    The trial court and respondent discussed at length the prior appointed counsel,

respondent's decision to proceed *pro se*, and respondent's right to hire private counsel at any time. After this discussion and a discussion as to the scheduled January 2, 2025, hearing on the petition to terminate respondent's parental rights, the court denied the motion to continue.

¶ 50                                  9. *Petitions for Relief From Judgment*

¶ 51            The trial court then proceeded to take up respondent's various pleadings referencing section 2-1401.

¶ 52            Respondent explained the claims underlying his section 2-1401 pleadings, which primarily revolved around the January 12, 2023, hearing. Respondent stated his "main argument" was no attorney appeared for the State at that hearing, and the documents which reflected Joshua Jones appearing for the State were false. Respondent argued other evidence of fraud upon (or by) the court and contended this fraud meant the entire juvenile proceedings were void. Respondent also alleged Timmerwilke had operated under a *per se* conflict of interest.

¶ 53            In response, the State argued respondent's claims were already matters of record, and therefore a section 2-1401 petition was not the appropriate avenue for relief. The State also argued respondent was attempting to "relitigate a temporary custody order that has been over two years ago, an adjudicatory order which again is more than two years old." The State asked for the petition to be denied.

¶ 54            The GAL also argued respondent had not argued any valid basis for relief from judgment under section 2-1401. He noted the proceedings currently before the trial court were termination proceedings and were separate from the adjudicatory and dispositional proceedings. The GAL continued, "It's untimely and it contains no basis, no cause or claim that could be considered by this Court as a basis for overturning and avoiding an adjudication that took place in January of [20]23." He further pointed to case law on the two-year statute of limitations

provided by section 2-1401 to argue the petition was untimely. The GAL concluded by arguing respondent's "conduct throughout this matter both before and after the filing of the petition for termination has been a delay, harassment, and creation of issues that simply do not exist or are not relevant to the issues at hand" and asked for the petition to be dismissed.

¶ 55 Respondent again pointed to his arguments pertaining to fraud on the court, and the trial court asked if his claims of fraud had any relation to the original petition for adjudication of wardship. Respondent stated he had raised "a Fourth Amendment ([U.S. Const., amend. IV)] violation with the DCFS worker going into [his] home," which Timmerwilke did not present. He also stated, "And as far as even timely, under duress, grounds of being kept infraudulently [*sic*], that tolls the time—"

¶ 56 The trial court stated it did not "see any basis for the Court to grant relief under 735 ILCS 5/2-1401," and denied the petition.

¶ 57                                F. Notices of Appeal

¶ 58 Respondent filed two notices of appeal on November 4, 2024. The first purported to be an interlocutory appeal for the review of a temporary restraining order. The appeal was docketed as case No. 4-24-1435 and *sua sponte* dismissed for failure to comply with supreme court rules. *In re K.S.*, 4-24-1435 (2024) (order) The second notice of appeal listed nine supreme court rules the appeal was brought pursuant to. Under the section for dates of orders or judgments appealed, respondent wrote, "We're appealing 'entire case,' " and listed 29 dates going back to August 9, 2022. This appeal was docketed as No. 4-24-1452 and *sua sponte* dismissed for failure to identify a final judgment. *In re K.S.*, 4-24-1452 (2024) (order).

¶ 59        On November 11, 2024, respondent filed the instant notice of appeal. Respondent cited Illinois Supreme Court Rule 304(b) (eff. Mar. 8, 2016) and again stated he was appealing the entire case, listing 34 dates of orders or judgments appealed, including November 1, 2024.

¶ 60                                II. ANALYSIS

¶ 61        As an initial matter, we address the timeliness of this disposition. As a matter addressing the custody of minor children, this case is subject to an expedited disposition under Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), requiring the appellate court to issue its decision within 150 days after the filing of a notice of appeal, except for good cause shown. Respondent filed his notice of appeal in this case on November 11, 2024. Our disposition was therefore due to be filed on April 11, 2025. However, the record consisted of over 2,900 pages, including over 1,300 pages of respondent's filings between August 2024 and the November 1, 2024, hearing, which were the direct focus of this appeal. Although every effort was made to comply with the deadline under Rule 311(a)(5), the voluminous record precluded us from doing so. These circumstances constitute good cause for the delay.

¶ 62                                A. Jurisdiction

¶ 63        We must also address our jurisdiction to hear this appeal. See *In re Alexis H.*, 335 Ill. App. 3d 1009, 1011 (2002) ("[A] reviewing court has a duty to consider *sua sponte* its jurisdiction and to dismiss the appeal if it determines that jurisdiction is wanting."). Respondent cited Illinois Supreme Court Rule 304(b) (eff. Mar. 8, 2016) in his notice of appeal. Rule 304(b) allows for appeals from certain judgments which do not dispose of an entire proceeding without a special finding of the court. *Id.* Relevant to this case, Rule 304(b)(3) allows for the appeal of an order granting or denying any relief pursuant to a petition under section 2-1401. Ill. S. Ct. R. 304(b)(3) (eff. Mar. 8, 2016). Respondent listed 34 dates of judgments in his notice of appeal,

one of which was November 1, 2024, the date of the denial of his section 2-1401 petition. Under the stated relief, respondent referenced his section 2-1401 petition several times. Additionally, respondent's notice of appeal was filed within 30 days of the order denying his section 2-1401 petition. Therefore, liberally construing respondent's notice of appeal (see *Village of Kirkland v. Kirkland Properties Holdings Co.*, 2023 IL 128612, ¶ 38), we find we have jurisdiction to consider the denial of respondent's 2-1401 petition on appeal pursuant to Rule 304(b)(3).

¶ 64 We note, however, we do not have jurisdiction to review the " 'entire case,' " as respondent contends by listing the date of every order issued by the trial court. The only other appealable order which appears in the record is the dispositional order. See *In re Leona W.*, 228 Ill. 2d 439, 456 (2008) (stating dispositional orders are regarded as final and appealable as a matter of right). Respondent did not file a timely notice of appeal within 30 days of the dispositional order. See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). Thus, we have jurisdiction only as to the section 2-1401 petition. *Village of Kirkland*, 2023 IL 128612, ¶ 41.

¶ 65 B. Motion to Withdraw

¶ 66 Appellate counsel now seeks to withdraw as counsel on the basis he cannot raise any argument of potential merit on appeal. Respondent has filed a response to appellate counsel's motion to withdraw.

¶ 67 The procedure for appellate counsel to withdraw set forth in *Anders* applies to proceedings under the Juvenile Court Act. *S.M.*, 314 Ill. App. 3d at 685. According to this procedure, counsel's request to withdraw must "be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744.

¶ 68 Here, counsel discusses at length in his brief each of respondent's arguments from his section 2-1401 petition and determines each of respondent's arguments are meritless.

Counsel also points out respondent's section 2-1401 petition was untimely under the Juvenile Court Act.

¶ 69                    1. *Section 2-1401 and the Juvenile Court Act*

¶ 70          Section 2-1401 of the Code provides relief "from final orders and judgments, after 30 days from the entry thereof." 735 ILCS 5/2-1401 (West 2022). The purpose of a section 2-1401 petition is for a party to bring to the court's attention facts that, if known at the time it rendered its judgment, would have changed the court's determination. See *In re Marriage of Arjmand*, 2013 IL App (2d) 120639, ¶ 29. To obtain relief from a final order under section 2-1401, the respondent must set forth specific factual allegations for each of the following elements: "(1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986). "[R]elief under section 2-1401 is available only from final orders and judgments. If an order is not final, section 2-1401 is inapplicable and cannot be the basis for vacating that order." *S.C. Vaughan Oil Co. v. Caldwell, Troutt & Alexander*, 181 Ill. 2d 489, 497 (1998).

¶ 71          Generally, a section 2-1401 petition must be filed within two years of the entry of judgment. 735 ILCS 5/2-1401(c) (West 2022). However, in proceedings under the Juvenile Court Act, the time limit for a section 2-1401 petition in juvenile cases is one year after the entry of the order or judgment. 705 ILCS 405/2-32 (West 2022); see 735 ILCS 5/2-1401(c) (West 2022) (stating one exception to the two-year limitation is section 2-32 of the Juvenile Court Act). A section 2-1401 petition filed after the provided period "cannot be considered absent a clear showing that the person seeking relief was under a legal disability or duress or the grounds for relief were fraudulently concealed." *People v. Pinkonsly*, 207 Ill. 2d 555, 562 (2003). Further,

challenges to void judgments are not restricted by the time limitations. 735 ILCS 5/2-1401(f) (West 2022) ("Nothing contained in this Section affects any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief.").

¶ 72                         2. *Timeliness of Respondent's Section 2-1401 Petition*

¶ 73           The only judgment respondent's section 2-1401 petition could attach to is the dispositional order entered on April 13, 2023. Respondent did not file his section 2-1401 petition, or any filing which could be construed as a section 2-1401 petition, until August 8, 2024, well over a year after the dispositional order was entered. Respondent's petition was therefore untimely filed.

¶ 74           In his response to appellate counsel's motion to dismiss, respondent correctly points out the trial court cannot *sua sponte* dismiss a section 2-1401 petition for untimeliness. The time limit provided in section 2-1401 "is a statute of limitations and not a jurisdiction prerequisite." *People v. Berrios*, 387 Ill. App. 3d 1061, 1063 (2009). The State, therefore, "must assert the time limitation as an affirmative defense," and the court may not dismiss a petition *sua sponte* for untimeliness. *Id.* Respondent points to the analysis in *People v. Cathey*, 2019 IL App (1st) 153118, ¶ 18, which states, "When the State does not answer a petition, its failure to respond constitutes an admission of all well-pleaded facts and that no triable issue of fact exists." Further, the State forfeits the affirmative defense of timeliness by failing to raise it before the trial court. *Id.* ¶ 19. Respondent focuses on the lack of a written response within 30 days of the filing of his section 2-1401 petition as proof the trial court could not dismiss his petition for untimeliness.

¶ 75           Although neither the State nor the GAL filed a written response to respondent's section 2-1401 petition, that does not automatically mean they admitted all well-pleaded facts

and forfeited the timeliness issue. The trial court explicitly rejected respondent's motion for summary judgment of major facts and excused the State's lack of a written response. As the State pointed out, respondent never *stopped* filing his section 2-1401 petition. The majority of respondent's filings spanning August through October 2024 were either labeled part of his section 2-1401 petition or, per respondent's statements at the hearing, meant to be construed as part of his petition. It is not clear when or how the State could have filed a written response to a petition respondent was amending on a rolling basis almost up to the hearing.

¶ 76         Moreover, the State and GAL raised their responses to respondent's petition through argument at the hearing. In *Cathey*, the court noted, "[T]he State forfeited its affirmative defense of timeliness by not filing a response to the petition, and *nothing in the record indicates that the State objected to the petition as untimely before the trial court*." (Emphasis added.) *Id.* In this case, however, the GAL specifically raised the argument respondent's petition was untimely before the trial court and brought the court's attention to cases pertaining to dismissing a section 2-1401 petition based on untimeliness. Respondent acknowledged the untimeliness argument, stating, "And as far as even timely, under duress, grounds of being kept infraudulently [*sic*], that tolls the time—" Therefore, as the opposing party raised the timeliness of the petition, respondent must demonstrate some reason the petition remains timely, despite filing it over a year past the statutory deadline.

¶ 77         Section 2-1401 provides several exceptions to the typical deadline provided for petitions, and these exceptions equally apply to the briefer deadline under the Juvenile Court Act. "An untimely filed section 2-1401 petition *** may be considered if the record conclusively shows that the person seeking relief is under legal disability or duress, the grounds for relief are fraudulently concealed, or the order is void." *People v. Walker*, 2018 IL App (3d) 150527, ¶ 32.

At various points through his pleadings and argument, respondent referenced each of these reasons to excuse the untimeliness of his petition.

¶ 78                              a. Voidness

¶ 79        "Whether a judgment is void or voidable presents a question of jurisdiction." *People v. Davis*, 156 Ill. 2d 149, 155 (1993). "A judgment is void (as opposed to voidable) only if the court that entered it lacked jurisdiction." *People v. Rodriguez*, 355 Ill. App. 3d 290, 296 (2005); *People v. Speed*, 318 Ill. App. 3d 910, 914 (2001). For instance, where a court lacks jurisdiction of the parties or the subject matter, or exceeded its statutory power to act, any resulting judgment is void and may be attacked either directly or indirectly at any time. See *Davis*, 156 Ill. 2d at 155-56; see also *Rodriguez*, 355 Ill. App. 3d at 296 ("The jurisdictional failure can be the court's lack of (1) personal jurisdiction or (2) subject matter jurisdiction, but it can also be (3) that the court lacked the power to render the particular judgment or sentence."). "By contrast, a voidable judgment is one entered erroneously by a court acting within its jurisdiction and is correctable on review [only] if a timely appeal is taken." *Speed*, 318 Ill. App. 3d at 914. "Generally, once a court has acquired jurisdiction, no subsequent error or irregularity will oust the jurisdiction thus acquired. Accordingly, a court may not lose jurisdiction because it makes a mistake in determining either the facts, the law or both." *Davis*, 156 Ill. 2d at 156. Further, although fraud *can* render a judgment void, not all fraud does so. *In re M.B.*, 235 Ill. App. 3d 352, 377 (1992).

¶ 80                              i. *Jurisdiction*

¶ 81        Personal jurisdiction is the court's power "to bring a person into its adjudicative process." (Internal quotation marks omitted.) *In re M.W.*, 232 Ill. 2d 408, 415 (2009). The appearance of the minor's legal guardian, custodian, or any person named in the petition in any

proceeding under the Juvenile Court Act "shall constitute a waiver of service of summons and submission to the jurisdiction of the court" unless an objection to personal jurisdiction is filed at that time. 705 ILCS 405/2-15(7) (West 2022). Respondent appeared at the initially scheduled sentencing hearing with private counsel without raising personal jurisdiction, and he was present at every substantive hearing thereafter. Therefore, the court undoubtably had personal jurisdiction over respondent.

¶ 82     "Subject matter jurisdiction refers to the court's power to hear and determine cases of the general class to which the proceeding in question belongs." (Internal quotation marks omitted.) *M.W.*, 232 Ill. 2d 408, 415 (2009). Generally, the trial "court's subject matter jurisdiction is conferred entirely by our state constitution." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). Respondent did not argue, nor do we find anything suggesting, the trial court lacked subject matter jurisdiction over the juvenile proceeding.

¶ 83     Finally, respondent argues that the trial court exceeded its statutory power by holding the adjudicatory hearing over 90 days after the action commenced. The Juvenile Court Act requires adjudication hearings to be held in a timely manner, as "serious delay in the adjudication of abuse, neglect, or dependency cases can cause grave harm to the minor and the family and that it frustrates the health, safety and best interests of the minor and the effort to establish permanent homes for children in need." 705 ILCS 405/2-14(a) (West 2022). The Juvenile Court Act provides, "When a petition is filed alleging that the minor is abused, neglected or dependent, an adjudicatory hearing shall be commenced within 90 days of the date of service of process upon the minor, parents, any guardian and any legal custodian." *Id.* § 2-14(b). The time limits provided in the Juvenile Court Act may be waived "only by consent of all

parties and approval by the court." *Id.* § 2-14(d). "If the adjudicatory hearing is not heard within the time limits required by subsection (b) or (c) of this Section, upon motion by any party the petition shall be dismissed without prejudice." *Id.* § 2-14(c).

¶ 84    In this case, the petition was filed and the parties appeared on August 9, 2022. The adjudicatory hearing was not held until January 19, 2023, after the 90 days prescribed in the Juvenile Court Act passed. Respondent argued at the November 1, 2023, hearing, because the adjudicatory hearing was late, "That's a mandatory dismissal." We disagree. First, the 90-days can be extended by consent of the parties or in the best interest of the minor. See *id.* § 2-14(c), (d). Second, the Juvenile Court Act does not require the automatic mandatory dismissal of a case after 90 days have passed. Instead, the provision specifically states, "*upon motion by any party the petition shall be dismissed without prejudice.*" (Emphasis added.) *Id.* § 2-14(c). In this case, no party filed a motion to dismiss the case for running over the 90-day period, so the trial court was not required to dismiss the case. See *In re S.W.*, 342 Ill. App. 3d 445, 452 (2003). The court acted within its authority in holding the adjudicatory hearing.

¶ 85                                        ii. *Fraud*

¶ 86    Respondent argues his claim of extrinsic fraud upon the court renders any judgment void.

¶ 87    Illinois courts have recognized two types of fraud in court proceedings. The first is extrinsic fraud, which prevents the court from acquiring jurisdiction. *Falcon v. Faulkner*, 209 Ill. App. 3d 1, 13 (1991). This type of fraud gives the court only "colorable" jurisdiction. *Id.* The second type of fraud is that which occurs after the court acquires jurisdiction, such as perjury or concealment. *Id.* The classic definition of extrinsic fraud refers to circumstances where the unsuccessful party has been "prevented from exhibiting fully his case *** as by keeping him

away from court *** or where the defendant never had knowledge of the suit." (Internal quotation marks omitted.) *Id.* Only extrinsic fraud renders a judgment void. *Id.* "The party attacking the judgment on the ground of extrinsic fraud carries the burden of supporting his claim with adequate evidentiary support; thus, it is a factual determination given deference on review." *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶ 52.

¶ 88        Respondent's initial petition, filed on August 8, 2024, presented nothing more than vague and conclusory allegations of fraud. It alleged only in general terms respondent could show the proceedings were "voidable" "[w]ith what's already in the record." His later motions, amendments, and addendums did allege various instances of fraud. At the hearing on his petition, respondent stated "more or less the main argument" of fraud upon the court was the January 12, 2023, hearing. Respondent argued no attorney appeared to represent the State, but the records showed an appearance by "JLJ."

¶ 89        Even if taken as entirely true, the fraud allegation by respondent does not rise to the level of extrinsic fraud upon the trial court. Respondent claims that the State did not appear at a single hearing on January 12, 2023, and that the transcripts and record incorrectly state there was an appearance for the State by Joshua Jones. The only matter covered at the hearing was an uncontested motion for a continuance because the assigned state's attorney and Melissa's counsel were in a jury trial and unavailable for the hearing. Even if the transcript and record incorrectly showed a representative of the State was present, the problem is ministerial and occurred well after the court properly acquired jurisdiction. An incorrect record of appearance for a nonsubstantive hearing on an agreed motion in no way prevented respondent from "exhibiting fully his case." (Internal quotation marks omitted.) *Falcon*, 209 Ill. App. 3d at 13. Even if no one for the State was actually present at the hearing to agree to the continuance, the

result would have been the same—a continuance for a week until the attorneys were available. Respondent was then able to fully participate in the continued adjudicatory hearing. Respondent's claims of fraud are woefully insufficient to negate the entire proceedings as void.

¶ 90    In his answer to counsel's motion to withdraw, respondent cites several federal cases on fraud upon the court. These cases deal with the federal rules of civil procedure, which do not apply to state court proceedings. See *Bianchi v. Savino Del Bene International Freight Forwarders, Inc.*, 329 Ill. App. 3d 908, 928 (2002); see also *Lang v. Social Security Administration*, 612 F.3d 960, 966 (8th Cir. 2010) ("It is axiomatic that state rules of civil procedure apply to state court actions, and the federal rules of civil procedure do not."). Therefore, these cases do not alter our decision under Illinois law.

¶ 91    b. Legal Disability, Duress, and Fraudulent Concealment

¶ 92    A "person under legal disability" is defined as a person who has some disability or incapacity that prevents her from being "fully able to manage his or her person or estate." 5 ILCS 70/1.06 (West 2022); see *Parks v. Kownacki*, 193 Ill. 2d 164, 178 (2000). A person may have a disability but not be under a legal disability. Respondent never explains how he is or had been under a legal disability. In fact, we note, respondent has maintained he is and has been fully capable of caring for K.S., which is at odds with any argument he was unable to "fully manage his *** person or estate" during the relevant period. See 5 ILCS 70/1.06 (West 2022).

¶ 93    "Duress includes oppression, undue influence, or taking undue advantage of the stress of another to the point where another is deprived of the exercise of free will." *In re Marriage of Richardson*, 237 Ill. App. 3d 1067, 1082 (1992). Duress is not established merely because a party is in a vulnerable position. See *In re Marriage of McCaskey*, 167 Ill. App. 3d

860, 864-65 (1988). Respondent did not allege any way he was deprived of his exercise of free will in the time between the dispositional order and the filing of his section 2-1401 petition.

¶ 94        Fraudulent concealment is defined as: "The affirmative suppression or hiding, with the intent to deceive or defraud, of a material fact or circumstance that one is legally (or, sometimes, morally) bound to reveal." Concealment, Black's Law Dictionary (12th ed. 2024). Respondent has not alleged any material fact or circumstance which was unknown to him, any party legally bound to reveal that fact or circumstance, or any affirmative act of suppression that party could have taken.

¶ 95        As we can find no meritorious argument, no exception to the one-year time period for filing section 2-1401 petitions under the Juvenile Court Act applies to respondent's petition. We agree counsel on appeal can make no meritorious argument respondent's petition should not have been dismissed for untimeliness. See *People v. Thompson*, 2015 IL 118151, ¶ 29 ("When a [section 2-1401] petition is filed after the two-year limitations period and there is no basis to excuse the delay, the petition cannot be considered unless the limitations period is waived by the opposing party.").

¶ 96                        3. *Other Arguments*

¶ 97        Because no meritorious argument can be raised that respondent's petition should not have been dismissed as untimely, we need not further address counsel's extensive argument he can make no meritorious argument on appeal regarding each of respondent's claims in his section 2-1401 petition.

¶ 98                        III. CONCLUSION

¶ 99        For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 100        Affirmed.